## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>**INTEGRATED HEALTH SERVICES,<br>INC.**, *et al.*,<br><br>       **Debtors.** | **CHAPTER 11**<br><br>**CASE NO. 00-389 (MFW)**<br>**(Jointly Administered)** |
| **INDEMNITY INSURANCE COMPANY<br>OF NORTH AMERICA,**<br>       **Plaintiff,**<br>     v.<br>**INTEGRATED HEALTH SERVICES,<br>INC. and ABE BRIARWOOD CORP.,**<br>       **Defendants.** | **C.A. No. 04-1262 (GMS)** |

### MOTION TO AMEND COMPLAINT[1]

Indemnity Insurance Company of North America ("**IICNA**"), by its attorneys, moves this Court for an order approving an amendment to the Complaint pursuant to Federal Rule of Civil Procedure 15(a) and D.Del. LR 15.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, as follows:

### BACKGROUND

**A.    Procedural History**

1.    IICNA instituted this adversary proceeding by filing its August 15, 2003 Complaint in the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**")(Bankruptcy Adversary Docket No. 1).

---

[1] IICNA waives its right to file an opening brief in support of this Motion pursuant to D.Del. LR 7.1.2.  IICNA reserves the right to file a brief in reply to any opposition to this Motion.

2.      On November 11, 2003, defendants Integrated Health Services, Inc. ("**IHS**") and Abe Briarwood Corp. ("**Briarwood**" and together with IHS, the "**Defendants**") filed an Answer to the Complaint (Bankruptcy Adversary Docket No. 6).[2]

3.      By Order dated December 2, 2004, this Court granted IICNA's Motion for Withdrawal of Reference and withdrew reference of this adversary proceeding from the Bankruptcy Court. (District Court Docket No. 7).

4.      No scheduling order has been entered in this adversary proceeding.

**B.      Relationship of Defendants**

5.      Pursuant to a Stock Purchase Agreement dated January 28, 2003 between IHS and Briarwood, IHS contracted to sell its long-term care and rehabilitation therapy business to Briarwood. The sale was effectuated, *inter alia*, by the formation of IHS Long Term Care, Inc. ("**IHS LTC**").

6.      In conjunction with the closing on the Stock Purchase Agreement, IHS assigned certain of its liabilities, including "any and all past, current and future professional and general liability claims ("**PLGL Claims**") arising after" February 2, 2000, to IHS LTC. *See*, Disclosure Statement for Amended Joint Plan of Reorganization of Integrated Health Services, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code ("**Disclosure Statement**") (Bankruptcy Docket No. 8555) at pp. 5-6. Briarwood assumed liability for such PLGL Claims upon purchasing all shares of IHS LTC on the closing date. *See*, Disclosure Statement at p. 6.

**C.      Insurance Coverage**

7.      IICNA issued an Excess Liability Catastrophe Policy to IHS for the policy period January 1, 1999 to January 1, 2000, with limits of liability insurance of $50 million for each

---

[2] Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure ("**FRCP**") and D. Del. LR 7.1.1., IICNA sought Defendants' consent to amend the Complaint. Because Defendants will not consent to IICNA's proposed amendment, IICNA was required to file this Motion.

occurrence, and $50 million in the aggregate, in excess of underlying insurance limits of $50 million each occurrence/$50 million aggregate which in turn is excess of underlying insurance or retained limit (the "**1999 IICNA Policy**").

8.      The underlying insurance is comprised of a primary policy issued by Reliance Insurance Company with professional liability limits of $2 million per occurrence/$4.5 million aggregate (the "**Reliance Policy**").

9.      National Union Fire Insurance Company of Pittsburgh ("**National Union**") issued an excess insurance policy providing both professional liability and general liability coverage for IHS for the policy period January 1, 1999 through January 1, 2000 (the "**National Union Policy**").    The National Union Policy provides the first layer of $25 million per occurrence/aggregate in excess of the Reliance Policy.

10.      General Star Indemnity Company ("**GenStar**") issued an excess insurance policy providing both professional liability and general liability coverage for IHS for the policy period January 1, 1999 through January 1, 2000 (the "**GenStar Policy**").    The GenStar Policy provides the second layer of $25 million per occurrence/aggregate in excess of the Reliance Policy and National Union Policy.    The 1999 IICNA Policy is the third layer of coverage in excess of the Reliance Policy, National Union Policy and GenStar Policy.

11.      On March 26, 2003, IHS filed an adversary proceeding in the Bankruptcy Court styled *Integrated Health Services, Inc. v. National Union Fire Insurance Company of Pittsburgh, PA*, adv. proc. no. 03-52081, in an effort to enforce coverage under the National Union Policy (the "**National Union Adversary**").    IHS sought to have its excess carrier, National Union, assume administration and defense of any remaining open PLGL Claims from 1999 ("**1999 Claims**").    IHS further alleged in the National Union Adversary that the settlement value of the

open 1999 Claims was in excess of the limits of the National Union Policy and would reach, at a minimum, the next layer of coverage which is provided by GenStar.

12.     The Bankruptcy Court entered partial summary judgment in favor of IHS by Order Granting Debtors' Motion for Partial Summary Judgment dated October 23, 2003 (the "**Summary Judgment Order**").  The Summary Judgment Order held, *inter alia*, that National Union was obligated to pay 1999 Claims because the National Union Policy was triggered upon IHS becoming liable for such claims, whether by settlement or judgment, regardless of whether underlying insurance was actually paid for such claims.  National Union did not appeal from the Summary Judgment Order.  On information and belief, after the issuance of the Summary Judgment Order, National Union assumed the administration and defense of the 1999 Claims.

13.     On information and belief, National Union has entered into settlement agreements on behalf of IHS and/or obligated itself to satisfy judgments against IHS up to the $25 million limit of the National Union Policy.  On information and belief, GenStar has now assumed the administration and defense of the remaining open 1999 Claims.  On information and belief, GenStar has entered into settlements on behalf of IHS and/or obligated itself to satisfy judgments against IHS that will soon exhaust the $25 million limit of the GenStar Policy.

14.     The 1999 IICNA Policy language differs significantly from the National Union Policy in that coverage under the 1999 IICNA Policy is triggered ***only by actual payment*** of underlying insurance coverage and not simply upon the insured incurring liability.  Since the Reliance Policy was not exhausted by actual payment of policy proceeds, the 1999 IICNA Policy is not triggered.

-4-

## RELIEF REQUESTED

15.    IICNA seeks to amend its Complaint to, *inter alia*, seek a declaration from this Court that the 1999 IICNA Policy language requires actual payment of underlying insurance coverage before the 1999 IICNA Policy must respond to claims.[3]

16.    "Federal Rule of Civil Procedure 15(a) allows courts to freely permit amendments to complaints as justice requires." *PE Corporation v. Affymetrix, Inc.*, 2001 WL 1180280, Robinson, C.J., *1 (D.Del. Sept. 27, 2001)(citing FRCP 15(a)). Such amendments should relate back to the date of the original filing where the claims in the amended pleading arose from the same conduct, transaction or occurrence set forth in the original pleading. *Yorden v. Flaste*, 374 F.Supp. 516, 519 (D.Del. 1974); *Finley Associates, Inc. v. Sea & Pines Consolidated Corp.*, 714 F.Supp. 110, 116 (D.Del. 1989); FRCP 15(c).

17.    IHS seeks coverage under the 1999 IICNA Policy. The Defendants have been well aware since the inception of this adversary proceeding of the disputes over insurance coverage for the PLGL Claims. The Defendants therefore cannot genuinely claim undue prejudice by the proposed amendments.

18.    Additionally, neither Defendant can claim undue prejudice by the proposed amendments because this matter has only recently been transferred to this Court, no scheduling order has been entered in this matter and, therefore, the Defendants are able to conduct discovery to fully explore the claims contained in the amended Complaint. These circumstances warrant exercise of this Court's discretion to approve amendment of the Complaint so that all relevant issues are determined on the merits.

---

[3] The proposed amendments to the Complaint are summarized herein for sake of brevity and are not intended to limit the scope of such amendments. IICNA respectfully directs this Court to the proposed amended Complaint attached hereto as Exhibit "A" pursuant to D.Del. LR 15.1 for a complete recitation of the proposed amendments. A clean copy of the Amended Complaint is attached as Exhibit "B."

DOCS_DE 108275v3

**WHEREFORE**, Plaintiff, Indemnity Insurance Company of North America, respectfully requests entry of an order in the form attached approving an amendment to the Complaint as set forth at Exhibit "B" and any other relief the Court deems appropriate.

WHITE AND WILLIAMS LLP

/s/ Marc S. Casarino
Christian J. Singewald (No. 3542)
Marc S. Casarino (No. 3613)
824 N. Market Street , Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
Telephone: (302) 467-4510
Telecopier: (302) 467-4547
casarinom@whiteandwilliams.com

and

Leonard P. Goldberger
Martha E. Johnston
(Members of the PA Bar)
1800 One Liberty Place
Philadelphia, PA  19103
Telephone:  (215) 864-7000
Telecopier: (215) 864-7123

and

Francis J. Deasey, Esquire
Gerald J. Valentini, Esquire
DEASEY, MAHONEY & BENDER, LTD.
1800 John F. Kennedy Boulevard
Suite 1300
Philadelphia, PA  19103
Telephone:  (215) 587-9400
Telecopier:  (215) 587-9456

Attorneys for *Indemnity Insurance Company of North America*

-6-