# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) CHAPTER 11 |
| | ) |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | ) |
| | ) |
| Debtors. | ) BANKR. CASE NO. 00-389 (MFW) |
| | ) (Jointly Administered) |
| | ) |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INTEGRATED HEALTH SERVICES, INC. and ABE BRIARWOOD CORP., | ) |
| | ) CIVIL ACTION NO. 04-1262 (GMS) |
| Defendants. | ) ADVERSARY PROCEEDING |
| | ) NO. 03-55550 |

Deleted: NO. 03-

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Indemnity Insurance Company of North America ("IICNA"), by and through its

undersigned counsel of record, files this Amended Complaint for Declaratory Judgment against

defendants, Integrated Health Services, Inc. and Abe Briarwood Corp., and in support thereof

avers as follows:

Deleted: brings
Deleted: certain declaratory relief

A.    THE PARTIES

Deleted: Parties
Formatted: Left

1.    Plaintiff, IICNA, is an insurance company organized and existing under the laws

of the State of Connecticut, with its principal place of business located at 1601 Chestnut Street,

Deleted: Indemnity Insurance Company of North America ("
Deleted: ")
Formatted: Font: 8 pt
Deleted: DOCS_DE 81026v1

DOCS_DE 109041v1

Philadelphia, PA 19103, and with offices located at 500 Colonial Center Parkway, Suite 200,

Roswell, Georgia 30076.

      2.      Defendant, Integrated Health Services, Inc. ("IHS"), is a corporation organized

and existing under the laws of the State of Delaware, with its principal place of business located

at 910 Ridgebrook Road, Sparks, MD 21152.

      3.      Defendant, Abe Briarwood Corp. ("Briarwood"), is a corporation organized and

existing under the laws of the State of Nevada, with its principal place of business located at 321

Fifth Avenue, New York, NY 10016.

**B.**      **JURISDICTION AND VENUE**

      4.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

§§ 1357(c), 1334(b) and 2201(a).  This is a non-core proceeding pursuant to 28 U.S.C.

§ 157(c)(1) and IICNA does not consent to the entry of final orders or judgments by the

bankruptcy judge in the underlying bankruptcy case.  By Order dated December 2, 2004, this

Court granted IICNA's Motion for Withdrawal of Reference and withdrew reference of this

adversary proceeding from the bankruptcy court.

      5.      Jurisdiction is also founded upon diversity of citizenship under 28 U.S.C. § 1332

as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and under

28 U.S.C. §2201 for the entry of a declaratory judgment.  Venue in this district is proper

pursuant to 28 U.S.C. § 1409(a).

DOCS_DE 109041v1

C.    **BACKGROUND – IHS' BANKRUPTCY CASE**

6.    IHS, along with its various affiliates, filed Petitions for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware on February 2, 2000 under Case No. 00-389 (MFW).

7.    By Findings Of Fact, Conclusions Of Law, And Order Under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming Amended Joint Plan Of Reorganization Of Integrated Health Services, Inc. And Its Subsidiaries Under Chapter 11 Of The Bankruptcy Code dated May 12, 2003 (the "Confirmation Order"), the Bankruptcy Court confirmed the Amended Joint Plan Of Reorganization Of Integrated Health Services, Inc. And Its Subsidiaries Under Chapter 11 Of The Bankruptcy Code, dated March 13, 2003 [Doc. No. 9349](the "Plan").

8.    IICNA filed objections to confirmation of the Plan because, *inter alia,* the Plan prejudiced IICNA's rights under IICNA's various insurance policies issued to IHS.  IICNA's objections to the Plan are incorporated herein by reference.

9.    IICNA's objections to the Plan were resolved by the inclusion in the Confirmation Order of the following reservations of IICNA's rights:

(e)    With respect to the Objection filed by Pacific Employers Insurance Company *et al.,* the Debtors have agreed as follows:  Notwithstanding any other term or provision in the Plan, this Order (i) is without prejudice to the rights, claims and/or defenses of Pacific Employers Insurance Company, Century Indemnity Company (as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Co.), Indemnity Insurance Company of North America and ACE American Insurance Co. (collectively, "Insurers") under the Debtors' insurance policies with the Insurers (the "Policies") and/or the reservation of rights by Insurers as to any issues relating to the Policies (as such issues are set forth in Insurers' Objections to Confirmation [Doc. No. 9349]; *provided, however,* that the Insurers and the Debtors agree that to the extent section 365 of the Bankruptcy Code is applicable, nothing in the Plan or this Order shall be

- 3 -

DOCS_DE.109041v1

deemed to constitute a rejection of the Policies under section 365 of the Bankruptcy Code; (ii) confirms that all of the terms, conditions, limitations and/or exclusions contained in the Policies shall remain in full force and effect; (iii) confirms that the Debtors and the Reorganized Debtors shall remain as the insureds under the Policies, and the Debtors, the Reorganized Debtors and the Insurers shall remain bound by all of the terms, conditions, limitations and/or exclusions contained in the Policies; (iv) confirms that the Policies, to the extent they so provide, shall not be assigned by the Debtors or the Reorganized Debtors without Insurers' express written consent; (v) acknowledges that nothing in the Plan shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Policies; and **(vi) is without prejudice to any of the Insurers' or the Debtors' (or the Reorganized Debtors', if applicable) rights and/or defenses in any pending or subsequent litigation in which Insurers or the Reorganized Debtors may seek a declaration regarding the nature and/or extent of any coverage under the Policies.**

Confirmation Order, ¶ 35(e) (emphasis added).

10.    The Effective Date of the Plan was September 9, 2003.

**D.    THE STOCK PURCHASE AGREEMENT AND SETTLEMENT WITH BRIARWOOD**

11.    Pursuant to a Stock Purchase Agreement dated January 28, 2003 between IHS and Briarwood, IHS contracted to sell its long-term care and rehabilitation therapy business to Briarwood. A copy of the Stock Purchase Agreement is attached hereto as Exhibit "A" and incorporated herein by reference. The sale was effectuated by the formation of two new IHS subsidiaries, *i.e.*, the LTC subsidiary and the Therapy subsidiary (as defined in the Stock Purchase Agreement), all shares of which were purchased by Briarwood on the closing date.

12.    The Bankruptcy Court approved the sale transaction contemplated by the Stock Purchase Agreement on March 14, 2003.

13.    The Stock Purchase Agreement provides that IHS has "made available" to Briarwood "accurate and complete copies of all material policies of insurance . . . to which the

- 4 -

Deleted: 8
Deleted: Upon information and belief, t
Deleted: has not yet occurred
Formatted: Line spacing: single
Deleted: B.   The IICNA Policy
Deleted: 9
Formatted: Font: Italic
Formatted: Font: 8 pt
Deleted: DOCS_DE 81026v1

seller [IHS] or any subsidiary is or was a party . . . at any time since January 1, 2000 . . .".
Exhibit "A" Sec. 3.14.

14.     The Stock Purchase Agreement further provides that IHS has received no refusal
of coverage, reservation of rights notice or cancellation with respect to any policy of insurance
and that "each policy of insurance is legal, valid, binding, enforceable, and in full force and
effect". Exhibit "A" Sec. 3.14(c).

15.     Upon information and belief, a dispute arose between IHS and Briarwood with
respect to the completion of the stock purchase transaction. Briarwood filed Motions to Compel
IHS to consummate the transaction and IHS filed a notice of termination. Among other issues,
Briarwood complained that IHS had not informed it of a reservation of rights letter that IICNA
provided to IHS on November 9, 2002. (Motion to Compel ¶ 11-13). In its second Motion to
Compel the Debtor to Close, Briarwood requested that the Bankruptcy Court, by application of
New York law, determine that the 2000 IICNA Policy (as defined below) "is in full force and
effect and ACE cannot disclaim coverage".

16.     IICNA filed objections to the Motion to Compel asserting, *inter alia*, that
Briarwood had no standing and that the Bankruptcy Court lacked jurisdiction to determine the
parties' rights and obligations under the 2000 IICNA Policy.

17.     IHS and Briarwood settled their dispute pursuant to the terms of their Stipulation
of Settlement (the "Stipulation") approved by the Bankruptcy Court on July 21, 2003. The
Stipulation provides, *inter alia*, that the closing under the Stock Purchase Agreement would take
place by August 31, 2003. By agreement of all parties as placed on the record at a hearing on

- 5 -

DOCS_DE 109041v1

July 21, 2003, the demand for declaration concerning the 2000 IICNA Policy and IICNA's objections thereto were carved out, and not resolved by, the Stipulation.

18.     Briarwood acknowledged in the Stipulation that "it will be subject to the confirmation order in all respects, notwithstanding any provision therein to the contrary". Stipulation, ¶ 27.

E.     THE IICNA POLICY FOR THE POLICY PERIOD FROM JANUARY 1, 2000 TO JANUARY 1, 2001

19.     IICNA issued an Excess Liability Catastrophe Policy, No. XLXG20108034 to IHS for the policy period January 1, 2000 to January 1, 2001, with limits of liability insurance of $50,000,000 for each occurrence, and $50,000,000 in the aggregate, in excess of underlying insurance limits of $50,000,000 each occurrence/$50,000,000 aggregate (where applicable) (the "2000 IICNA Policy"). A true and correct copy of the 2000 IICNA Policy is attached hereto as Exhibit "B" and incorporated herein by reference.

20.     Pursuant to the insuring agreements of the 2000 IICNA Policy, coverage under the policy is afforded as follows:

    A.     COVERAGE

    We will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of UNDERLYING INSURANCE and (2) only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of OCCURRENCES that take place during OUR policy and are insured by all of the policies designated in the declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.
    The Definitions Terms, Conditions, Limitations and Exclusions of the first policy of UNDERLYING INSURANCE in effect at the inception date of this policy apply to this coverage unless they are

- 6 -

inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

21. The insuring agreement of the 2000 IICNA Policy further provides as follows:

> C. DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS
>
> 1. DEFENSE PROVISIONS
>
> When insurance is available to you in any UNDERLYING INSURANCE, WE shall not be called upon to assume charge of the investigation, settlement or defense of any SUIT brought against YOU, but WE shall have the right and be given the opportunity to be associated in the defense and trial of any SUITS relative to any occurrence which, in OUR opinion, may create liability on the part of US under the terms of this policy.
> We will assume charge of the settlement or defense of any suit brought against you to which this policy applies and to which no UNDERLYING INSURANCE applies because of the exhaustion of aggregate limits of insurance.
> If WE assume any right, opportunity or obligation, we shall not be obligated to defend any SUIT after the applicable limits of this policy have been exhausted.

22. Section IV of the 2000 IICNA Policy is entitled "Conditions" and provides, in pertinent part, as follows:

> B. ASSIGNMENT
>
> Interest in this policy may not be transferred to another except by an endorsement issued by US which gives OURS consent. If YOU are bankrupt, insolvent or if YOU die, this policy shall cover YOUR legal representative(s), but only while acting within the scope of their duties as such.
>
> ******
>
> F. DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT
>
> 1. YOU must see to it that WE receive prompt written notice of an OCCURRENCE or an offense which may result in a claim.

- 7 -

Deleted: 1
Deleted: I
Deleted: A
Deleted: 1
Deleted: 1
Formatted: Font: 8 pt
Deleted: DOCS_DE 81026v1

Notice should include.

      A.  How, when and where the OCCURRENCE or offense took place;

      B.  The names and addresses of any injured persons and witnesses.

2.      If a claim is made or suit brought against YOU, YOU must see to it that WE receive written notice of the claim or suit as soon as practicable.

3.      YOU and any other involved insured must:

      A.  immediately send US copies of any demands, notices, summons or legal papers received in connection with the claim or suit;

      B.  authorize US to obtain records or other information;

      C.  cooperate with US in the investigation, settlement or defense of the claim or risk;

      D.  assist US, upon OUR request, in the enforcement of any right against any person or organization which may be liable to YOU because of injury or damage to which this policy may also apply.

4.      YOU shall not make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim or suit without OUR written consent.

23.     The 2000 IICNA Policy is a follow form policy to the extent that the "definitions, terms, conditions, limitations and exclusions of the 'first policy of underlying insurance', in effect at the inception date of the policy" are not inconsistent with the provisions of the 2000 IICNA Policy and, as a result, the 2000 IICNA Policy incorporates by reference the terms and conditions of the various policies of underlying insurance including, but not limited to, any self-

**Deleted:** 1

**Formatted:** Font: 8 pt

**Deleted:** DOCS_DE 81026v1

insured retentions, deductibles or other policies of underlying insurance which underlie the $50,000,000 of underlying insurance identified in the 2000 IICNA Policy.

    24.    In addition to the named insured, IHS, subsidiaries of IHS *in existence* during the policy period may also qualify as additional insureds under the 2000 IICNA Policy.

    25.    The limits of insurance underlying the 2000 IICNA Policy have been exhausted and IICNA, pursuant to a reservation of rights and non-waiver agreement, has been defending covered claims that are outstanding against IHS pursuant to the terms of the 2000 IICNA Policy.

F.    THE IICNA POLICY FOR THE POLICY PERIOD
    FROM JANUARY 1, 1999 TO JANUARY 1, 2000

    26.    IICNA issued an Excess Liability Catastrophe Policy, No. XLXG19524139 to IHS for the policy period January 1, 1999 to January 1, 2000, with limits of liability insurance of $50,000,000 for each occurrence, and $50,000,000 in the aggregate, in excess of underlying insurance limits of $50,000,000 each occurrence/$50,000,000 aggregate (the "1999 IICNA Policy"). A true and correct copy of the 1999 IICNA Policy is attached hereto as Exhibit "C" and incorporated herein by reference.

    27.    Pursuant to the insuring agreement of 1999 IICNA Policy coverage under the policy is afforded as follows:

    A.    COVERAGE

We will pay on YOUR behalf the ULTIMATE NET LOSS (1) in excess of UNDERLYING INSURANCE and (2) only after all UNDERLYING INSURANCE has been exhausted by the payment of the limits of such insurance for losses arising out of OCCURRENCES that take place during OUR policy and are insured by all of the policies designated in the declarations as UNDERLYING INSURANCE. If any UNDERLYING INSURANCE does not pay a loss for reasons other than the

| Deleted: 14 |
| Deleted: The IICNA Policy identifies the following policies of insurance issued to IHS as "Underlying Insurance".¶ |
| Deleted: 15 |
| Formatted: Font: 8 pt |
| Deleted: DOCS_DE 81026v1 |

- 9 -

exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.

The Definitions Terms, Conditions, Limitations and Exclusions of the first policy of UNDERLYING INSURANCE in effect at the inception date of this policy apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

28.    The insuring agreement of the 1999 IICNA Policy further provides as follows:

C.    DEFENSE PROVISIONS AND SUPPLEMENTAL PAYMENTS

1.    DEFENSE PROVISIONS

When insurance is available to you in any UNDERLYING INSURANCE, WE shall not be called upon to assume charge of the investigation, settlement or defense of any SUIT brought against YOU, but WE shall have the right and be given the opportunity to be associated in the defense and trial of any SUITS relative to any occurrence which, in OUR opinion, may create liability on the part of US under the terms of this policy.

We will assume charge of the settlement or defense of any suit brought against you to which this policy applies and to which no UNDERLYING INSURANCE applies because of the exhaustion of aggregate limits of insurance.

If WE assume any right, opportunity or obligation, we shall not be obligated to defend any SUIT after the applicable limits of this policy have been exhausted.

29.    Section IV of the 1999 IICNA Policy is entitled "Conditions" and provides, in pertinent part, as follows:

B.    ASSIGNMENT

Interest in this policy may not be transferred to another except by an endorsement issued by US which gives OURS consent. If YOU are bankrupt, insolvent or if YOU die, this policy shall cover YOUR legal representative(s), but only while acting within the scope of their duties as such.

DOCS_DE 109041v1

*******

F.    DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT

1.    YOU must see to it that WE receive prompt written notice of an OCCURRENCE or an offense which may result in a claim. Notice should include,

       A.   How, when and where the OCCURRENCE or offense took place;

       B.   The names and addresses of any injured persons and witnesses.

2.    If a claim is made or suit brought against YOU, YOU must see to it that WE receive written notice of the claim or suit as soon as practicable.

3.    YOU and any other involved insured must:

       A.   immediately send US copies of any demands, notices, summons or legal papers received in connection with the claim or suit;

       B.   authorize US to obtain records or other information;

       C.   cooperate with US in the investigation, settlement or defense of the claim or risk;

       D.   assist US, upon OUR request, in the enforcement of any right against any person or organization which may be liable to YOU because of injury or damage to which this policy may also apply.

4.    YOU shall not make or authorize an admission of liability or attempt to settle or otherwise dispose of any claim or suit without OUR written consent.

30.    The 1999 IICNA Policy is a follow form policy to the extent that the "definitions, terms, conditions, limitations and exclusions of the 'first policy of underlying insurance', in

- 11 -

Formatted: Normal, Indent: Left: 1", Right: 1", No widow/orphan control

Formatted: Font: 8 pt

Deleted: DOCS_DE 81026v1

effect at the inception date of the policy" are not inconsistent with the provisions of the 1999

IICNA Policy and, as a result, the 1999 IICNA Policy incorporates by reference the terms and

conditions of the various policies of underlying insurance including, but not limited to, any self-

insured retentions, deductibles or other policies of underlying insurance which underlie the

$50,000,000 of underlying insurance identified in the 1999 IICNA Policy.

     31.    In addition to the named insured, IHS, subsidiaries of IHS *in existence* during the

policy period may also qualify as additional insureds under the 1999 IICNA Policy.

     32.    In connection with the 1999 IICNA Policy, IICNA has been placed on notice by

IHS and/or the underlying insurers that the aggregate coverage limits of the underlying insurance

to the 1999 IICNA policy will soon be exhausted.

     33.    In connection with the 1999 IICNA Policy, upon information and belief, IICNA

avers that there are at least 100 claims and/or lawsuits presently pending against IHS for which

the alleged occurrence(s) took place, either in whole or in part, during the effective policy period

of the 1999 IICNA Policy (collectively the "1999 Claims").

     34.    IICNA has not received copies of all the complaints or other documentation

supporting the 1999 Claims, nor does IICNA possess all the pertinent details of the outstanding

1999 Claims. Accordingly, IICNA does not presently have the ability to evaluate the 1999

Claims, including portions or components of claims, to even determine if they are covered under

the 1999 IICNA Policy.

     35.    Once the underlying limits of insurance have been exhausted, IICNA has the

obligation to defend covered claims that are then outstanding against IHS pursuant to the terms

of the 1999 IICNA Policy.

| Deleted: its |
| Deleted: U |
| Deleted: I |
| Deleted: have been |

| Deleted: 16 |
| Deleted: Underlying I |
| Deleted: and, where applicable, indemnify |
| Formatted: Font: 8 pt |
| Deleted: DOCS_DE 81026v1 |

G.    **GENERAL ALLEGATIONS APPLICABLE TO THE 1999 IICNA POLICY**

36.    In connection with the insurance underlying the 1999 IICNA Policy, National Union Fire Insurance Company of Pittsburgh ("National Union") issued a Commercial Umbrella policy providing both professional liability and general liability coverage for IHS under policy no. BE 35743-43 for the policy period January 1, 1999 through January 1, 2000 (the "National Union Policy").

37.    The National Union Policy provides a coverage layer of $25,000,000 per occurrence/aggregate in excess of underlying insurance. The underlying insurance is comprised of a primary policy issued by Reliance Insurance Company ("Reliance") under policy no. NGB015164-00 (the "Reliance Policy") with professional liability limits of $2,000,000 per occurrence/$4,500,000 aggregate.

38.    The insureds under the Reliance Policy are IHS and IHS' various debtor and non-debtor subsidiaries.

39.    On October 3, 2001, the Commonwealth Court of Pennsylvania declared Reliance (parent company to Reliance National Indemnity Co.) insolvent and entered an order of liquidation (the "Liquidation Order"). The Order names the Insurance Commissioner of the Commonwealth of Pennsylvania as the Reliance liquidator.

40.    Upon information and belief, Reliance's insolvency and the Liquidation Order has resulted in the cessation of actual payments from what was to be the coverage limit under the Reliance Policy.

**Deleted: C. The Claims**

**Deleted:** 17. There are at least 250 claims and/or lawsuits presently pending against IHS for which the alleged occurrence(s) took place, either in whole or in part, during the effective policy period of the IICNA Policy (collectively, "Claims"). Although the exact number of Claims that will be made against IHS arising from occurrences during the effective policy period cannot presently be stated, IICNA believes and, therefore, alleges that there will likely be in excess of 250 Claims.¶
18. IICNA has not received copies of

**Deleted:**

**Formatted:** Font: 8 pt

**Deleted:** DOCS_DE 81026v1

DOCS_DE 109041v1

41.    Upon information and belief at the time of cessation of payments, there were several million dollars of unpaid aggregate limits under the Reliance Policy remaining.

42.    IHS allegedly "resolved" certain 1999 Claims in excess of the $4,500,000 aggregate retained limit under the Reliance Policy.  IHS sought to have its excess carrier, National Union, assume administration and defense of any remaining open 1999 Claims.

43.    IHS further alleged that the settlement value of the open 1999 Claims was in excess of the limits of the National Union Policy and would reach, at a minimum, the next layer of coverage which is provided by General Star Indemnity Company.

44.    National Union contended that the excess coverage provided by the National Union Policy was triggered only after the actual payment of the retained limit.  It therefore denied any obligation to assume the administration and defense of the 1999 Claims.

45.    IHS, therefore, filed an adversary proceeding against National Union in the Bankruptcy Court in an effort to enforce coverage under the National Union Policy.  A copy of IHS' Declaratory Judgment Complaint is attached hereto as Exhibit "D" and incorporated herein by reference (without admission or adoption of same).

46.    IHS argued, *inter alia*, that pursuant to Article 1 of the National Union Policy, coverage attaches under the National Union Policy when the insured is "legally obligated" to make payments in excess of the retained limit.

47.    Moreover, IHS contended that although the majority of the judgments and settlements of 1999 Claims had not been paid, it was nonetheless "legally obligated" to pay such amounts and that, therefore, IHS was entitled to coverage under the National Union Policy.

DOCS_DE 109041v1

Formatted: Font: 8 pt
Deleted: DOCS_DE 81026v1

48.     National Union replied and counterclaimed arguing, *inter alia*, that the 1999 Claims for which IHS sought coverage were comprised of claims asserted against both IHS and its non-debtor subsidiaries. National Union sought a declaration that non-debtor subsidiaries were required to make payments of sums within the retained limit. A copy of National Union's Answer, Affirmative Defenses and Counterclaims to IHS' Declaratory Judgment Complaint is attached hereto as Exhibit "E" and incorporated herein by reference (without admission or adoption of same).

49.     Bankruptcy Court entered partial summary judgment in favor of IHS by Order Granting Debtors' Motion for Partial Summary Judgment dated October 23, 2003 (the "Summary Judgment Order").

50.     National Union did not appeal from the Summary Judgment Order.

51.     On information and belief, after the issuance of the Summary Judgment Order, National Union assumed the administration and defense of the 1999 Claims.

52.     On information and belief, National Union has entered into settlement agreements on behalf of IHS and/or obligated itself to satisfy judgments against IHS up to the $25 million limit of the National Union Policy.

**H.     GENERAL ALLEGATIONS APPLICABLE TO COVERAGE
        UNDER THE 2000 IICNA POLICY**

53.     Briarwood and IHS LTC, through their counsel, have requested coverage under the 2000 IICNA Policy in connection with outstanding claims and complaints against IHS.

54.     In connection with Briarwood's and IHS LTC's request for coverage under the 2000 IICNA Policy, IICNA has requested financial information regarding Briarwood and IHS

- 15 -

Formatted: Font: 8 pt

Deleted: DOCS_DE 81026v1



LTC in order to determine whether transfer of the 2000 IICNA Policy to either Briarwood and/or IHS LTC without IICNA's express written consent would increase IICNA's exposure to the risk.

55.    Despite such demand, neither Briarwood nor IHS LTC has provided the financial information sought by IICNA.

## COUNT I

### REQUEST FOR DECLARATORY RELIEF REGARDING THE 1999 IICNA POLICY

56.    Paragraphs 1 through 55 hereof are hereby incorporated by reference as if more fully set forth at length.

57.    In ruling in favor of IHS and against National Union in connection with IHS' Declaratory Judgment Complaint, the Bankruptcy Court failed to require payment of claims within the retained limit by IHS' non-debtors subsidiaries.

58.    In ruling in favor of IHS and against National Union in connection with IHS' Declaratory Judgment Complaint, the Bankruptcy Court also refused to required payment of claims up to the limits of liability of the Reliance Policy.

59.    Because coverage under the 1999 IICNA Policy is triggered by actual payment of the underlying limits and is not simply predicated on the insured becoming "legally obligated" to pay, coverage under the 1999 IICNA Policy will not be triggered until the underlying limits are properly exhausted by actual payment.

WHEREFORE, IICNA respectfully requests a judgment declaring that:

(A)    Unless and until the limits of the underlying Reliance Policy, as well as the limits of all other underlying insurance, have been exhausted by the actual payment of claims against IHS during the relevant policy period, IICNA owes no duty under its 1999 IINCA Policy to

**Formatted:** Font: 8 pt

**Deleted:** DOCS_DE 81026v1

DOCS_DE 100041v1

indemnify and defend IHS for the 1999 Claims or any other claims otherwise occurring within the relevant policy period; and

(B)    For such other relief as may be just and proper.

## COUNT II

## REQUEST FOR DECLARATORY RELIEF REGARDING THE 2000 IICNA POLICY

60.    Paragraphs 1 through 59 hereof are hereby incorporated by reference as if more fully set forth at length.

61.    The 2000 IICNA Policy prohibits assignment of an interest under the policy without the express written consent of IICNA.  IICNA has not given express written consent to IHS to assign interest under the 2000 IICNA Policy.

62.    Moreover, the Confirmation Order prohibits assignment of the 2000 IICNA Policy without IICNA's express written consent.  Accordingly, it is the "law of the case" that the 2000 IICNA Policy is not assignable without IICNA's prior express written consent.

63.    In the event, however, that this Court declares the provisions of the 2000 IICNA Policy against assignment to be unenforceable and/or declares the provisions of the Confirmation Order prohibiting assignment of the 2000 IICNA Policy without IICNA's prior written consent to be unenforceable, Briarwood and IHS LTC are required, pursuant to paragraph (F) of the "Conditions" of the 2000 IICNA Policy to cooperate with IICNA in the event of a claim or suit.

64.    Briarwood and IHS LTC have failed and/or refused to provide pertinent financial information to IICNA whereby IICNA can determine whether assignment of the 2000 IICNA Policy to Briarwood and/or IHS LTC materially increases IICNA's exposure to the risk.

WHEREFORE, IICNA respectfully requests a judgment declaring that:

**Formatted:** Font: 8 pt
**Deleted:** DOCS_DE 81026v1

- 17 -

DOCS_DE 109041v1

(A)    There is no coverage for Briarwood or IHS LTC under the 2000 IICNA Policy because neither Briarwood nor IHS LTC are insureds under the 2000 IICNA Policy and do not otherwise qualify as insureds under the 2000 IICNA Policy; or, in the alternative,

(B)    If this Court declares that the purported assignment of the 2000 IICNA Policy to Briarwood and/or IHS LTC is valid and enforceable, there is no coverage under the 2000 IICNA Policy because Briarwood and IHS LTC have violated the terms and conditions of the 2000 IICNA Policy by failing and/or refusing to cooperate with IICNA in connection with IICNA's request for pertinent financial information in order to assess the increased risk and exposure to IICNA as a result of the assignment of the 2000 IICNA Policy to Briarwood and/or IHS LTC; and

(C)    For such other relief as may be just and proper.

Dated:                          WHITE AND WILLIAMS LLP

/s/ Marc S. Casarino
Christian J. Singewald (No. 3542)
Marc S. Casarino (No. 3613)
824 N. Market Street , Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
Telephone: (302) 467-4510
Telecopier: (302) 467-4547
casarinom@whiteandwilliams.com

and

Leonard P. Goldberger
Martha E. Johnston
(Members of the PA Bar)
1800 One Liberty Place
Philadelphia, PA  19103
Telephone:  (215) 864-7000
Telecopier: (215) 864-7123

**Formatted:** Font: 8 pt

**Deleted:** DOCS_DE 81026v1

- 18 -

and

Francis J. Deasey, Esquire
Gerald J. Valentini, Esquire
DEASEY, MAHONEY & BENDER, LTD.

**Deleted:** For Declaratory Relief¶

**Formatted:** Font: 8 pt

**Deleted:** DOCS_DE 81026v1