# Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | ) | Case Nos. 00-389 (MFW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020
CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION
OF INTEGRATED HEALTH SERVICES, INC. AND ITS
SUBSIDIARIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

WHEREAS, Integrated Health Services, Inc. ("IHS"), and its direct and indirect

subsidiaries, as debtors and debtors in possession (collectively with IHS, the "Debtors"), as

"proponents of the plan" within the meaning of section 1129 of title 11 of the United States Code

(the "Bankruptcy Code"), filed the *Amended Joint Plan of Reorganization of Integrated Health*

*Services, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated March 13,

2003 (as amended, modified or supplemented including by this Order, the "Plan", which Plan

amended the *Joint Plan of Reorganization of Integrated Health Services, Inc. and Its*

*Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated December 26, 2002)[1]; together

with the *Disclosure Statement for Amended Joint Plan of Reorganization of Integrated Health*

---

[1]     Unless otherwise defined herein, capitalized terms used herein shall have the meanings
ascribed to such terms in the Plan, a copy of which is annexed hereto as Exhibit "A."
Any term used in the Plan or this Confirmation Order that is not defined in the Plan or
this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that
term in the Bankruptcy Code or the Bankruptcy Rules.

*Services, Inc. and Its Subsidiaries Under Chapter 11 of the Bankruptcy Code*, dated March 13, 2003 (as transmitted to parties in interest, the "Disclosure Statement");

WHEREAS, on March 14, 2003, the Bankruptcy Court entered an order (the "Solicitation Order") that, among other things, (a) approved the Disclosure Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) established April 29, 2003, as the date for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (c) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and (d) established certain procedures for soliciting and tabulating votes with respect to the Plan;

WHEREAS, (a) as to Classes 2, certain subclasses of Class 3, 4, 5, 6, 7, 8 and 9, the Disclosure Statement, the Plan, the Solicitation Order, the Confirmation Hearing Notice and a Ballot and return envelope, and (b) as to Classes 1, certain subclasses of Class 3, 10, 11, 12 or 13, a Notice of Non-Voting Status, the Confirmation Hearing Notice and the Solicitation Order, were transmitted as set forth in the Declaration of Service of Alan Schmitz, Senior Vice President and Director of RCI Group Inc. sworn to on or about April 25, 2003 (as subsequently clarified on April 28, 2003, the "Schmitz Declaration") and the two Declarations of Service of Debra Reyes of Poorman-Douglas Corporation each sworn to on or about April 24, 2003 (the "Reyes Declarations"), and such service is adequate as provided by Bankruptcy Rule 3017(d);

WHEREAS, the Debtors filed the certificate of publication of Bridgette Trykoski, Principal Clerk of the Publisher of *The Wall Street Journal*, sworn to on April 4, 2003 (the "Trykoski Certificate"), attesting to the fact that the Confirmation Hearing Notice was published in *The Wall Street Journal* (National Edition) on April 4, 2003;

Doc #Confirmation Order.wpd

2

WHEREAS, on April 16, 2003, the Debtors filed the Plan Supplement with respect to the Plan, which was served upon (i) the United States Trustee, (ii) counsel for the Creditors' Committee, (iii) counsel for the Premiere Group Creditors' Committee, (iv) counsel for the Unofficial Senior Lenders' Working Group and (v) all parties having filed a notice of appearance and request for service herein in accordance with Bankruptcy Rule 2002;

WHEREAS, as set forth in the declaration of Debra Reyes sworn to on or about April 25, 2003, the Debtors served a notice of the filing of the Plan Supplement and the Schedule of Assumed Leases and Executory Contracts upon each of the non-debtor parties identified in the Schedule of Assumed Leases and Executory Contracts, together with notice of the Debtors' proposed full and final cure amount for such non-debtor party's lease or executory contract;

WHEREAS, the Debtors filed the Declaration of Debra Reyes Certifying the Acceptances and Rejections of the Plan, sworn to on April 25, 2003, attesting and certifying the method and results of the ballot tabulation for the Classes of Claims (Classes 2, 3, 4, 5, 6, 7, 8 and 9), entitled to vote to accept or reject the Plan (as supplemented thereafter, the "Voting Report");

WHEREAS, approximately 37 objections or purported objections to confirmation of the Plan were filed and served (the "Objections");

WHEREAS, certain of the Objections have been withdrawn or partially resolved on the terms and conditions (i) set forth in stipulations "so ordered" by the Court, (ii) described on the record of the Confirmation Hearing or (iii) set forth in this Order (collectively, the "Resolved Objections"), and the remaining Objections are overruled on the merits pursuant to this Confirmation Order;

WHEREAS, on April 25, 2003, the Debtors filed (i) a memorandum of law in support of confirmation of the Plan (the "Confirmation Memorandum") and (ii) a status report and response with respect to the Objections (the "Objections Response");

WHEREAS, on May 2, 2003, the Debtors filed a supplemental memorandum of law (the "Supplemental Memorandum") with respect to Objections filed by certain holders of Class 10 Claims;

WHEREAS, on April 7, 2003, the Debtors filed a motion for an order directing substantive consolidation of the Debtors for purposes of the Plan (the "Substantive Consolidation Motion");

WHEREAS, (i) upon the occurrence of certain conditions precedent set forth in Section 9.2(b)(2)(A) of the Plan, the Plan provided for the abandonment of the Sale Transactions and implementation of the Stand-Alone Transactions, and (ii) the Debtors, in consultation with the Creditors' Committee, the Unofficial Senior Lenders' Working Group and the Premiere Group Creditors' Committee, have determined that, at this time, they will seek confirmation of the Plan in contemplation of the implementation of the Sale Transactions only, and will reserve the right to ask the Court at a later time to authorize the implementation of the Stand-Alone Transactions in the event that the conditions precedent to the Sale Transactions set forth in the Section 9.2(b)(2)(A) of the Plan fail to occur;

WHEREAS, the Creditors' Committee and the Unofficial Senior Lenders' Working Group have selected Eureka Capital Markets, LLC or an affiliate thereof ("Eureka") to serve as the Liquidating Manager;

WHEREAS, the Creditors' Committee has designated PharMerica, Deutsche Bank AG (New York Branch) and General Electric Capital Corporation to serve as the members of the Post-Confirmation Committee;

WHEREAS, the Debtors, with the agreement of the Creditors' Committee, the Unofficial Senior Lenders' Working Group, and the Premiere Group Creditors's Committee, hereby modify the Plan as follows:

(A) The following language shall be added at the end of Section 8.4 of the Plan (in lieu of the period at the end of such section):

> "; provided that such fees and expenses shall not exceed the sum of (a) $270,000, which has accrued, and (b) $1,000,000, which shall be payable only if (i) the Sale Transactions close and (ii) any portion of the Class 4 Cash Fund that may be used by the Debtors is repaid in full."

(B) The Plan shall be modified to incorporate the Settlement Agreement dated as of January 1, 2003 (the "IHS/Lyric Settlement Agreement") among IHS, IHS Long Term Care, Inc., IHS Facility Management, Inc., Integrated Health Services Franchising Co., Inc., Lyric Health Care LLC ("Lyric"), Claremont Health Care, LLC ("Claremont"), Monarch Properties, LP and Monarch Properties at Jacksonville, LLC, an executed copy of which is attached hereto as Exhibit "B".

(C) The Plan and the compromise and settlement agreement between the Debtors and the Premiere Group Creditors' Committee which is incorporated into the Plan shall be modified and clarified as follows: To the extent that any holder of a Premiere Unsecured Claim receives a distribution under the Plan with respect to such claim, such holder shall be deemed to release the Debtors with respect to any guaranty claim against such Debtors relating to such

Premiere Unsecured Claim and further agrees to forego any distribution under the Plan on account of such guaranty claim.

(D) The Plan shall be modified as set forth herein; and

WHEREAS, the Confirmation Hearing was held on April 29, 2003 and May 7, 2003;

NOW, THEREFORE, based upon the Bankruptcy Court's review of the Voting Report, the Confirmation Memorandum, the Supplemental Memorandum the Objections Response and the Substantive Consolidation Motion; and upon (a) all the evidence proffered or adduced at, memoranda and Objections filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and (b) the entire record of the IHS Reorganization Cases; and after due deliberation thereon and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

IT IS HEREBY FOUND AND DETERMINED THAT:

1.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). This Bankruptcy Court has jurisdiction over the IHS Reorganization Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

---

[2]    Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

2.    <u>Judicial Notice</u>. This Bankruptcy Court takes judicial notice of the docket of the IHS Reorganization Cases maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the IHS Reorganization Cases, including, but not limited to, the hearing to consider the adequacy of the Disclosure Statement.

3.    <u>Burden of Proof</u>. The Debtors have satisfied the burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

4.    <u>Transmittal and Mailing of Materials; Notice</u>. The Disclosure Statement, the Plan, the Ballots, the Solicitation Order, and the Confirmation Hearing Notice, which were transmitted and served as set forth in the Schmitz Declaration and the Reyes Declarations, shall be deemed to have been transmitted and served in compliance with the Solicitation Order and the Bankruptcy Rules, such transmittal and service were adequate and sufficient, publication of the Confirmation Hearing Notice as set forth in the Trykoski Certificate was adequate and sufficient, and no other or further notice is or shall be required. In addition, the service of the Plan Supplement and the notice to non-debtor parties with respect to the Schedule of Assumed Leases and Executory Contracts was adequate under the circumstances and no other or further notice is or shall be required.

5.    <u>Voting</u>. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and industry practice.

Doc #Confirmation Order.wpd

6.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Expense Claims, Priority Tax Claims, and DIP Credit Facility Claims, which need not be designated, the Plan designates thirteen (13) Classes of Claims and Equity Interests. Each Other Secured Claim shall be deemed to be separately classified in a subclass of Class 3 and shall have all rights associated with separate classification under the Bankruptcy Code. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Section 3 of the Plan specifies that Classes 1, 3-A through 3-D and 12 are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>. Section 3 of the Plan designates Classes 2, 3-E through 3-K, 4, 5, 6, 7, 8, 9, 10, 11 and 13 as impaired and Section 4 of the Plan specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class

unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)    Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including (i) the substantive consolidation of the Debtors to the extent set forth in the Plan, (ii) the sale of substantially all of IHS' interests in the Debtors pursuant to the Sale Transactions, (iii) the formation of the LTC Subsidiary and Therapy Subsidiary, (iv) the Liquidating LLC Agreement, (v) the Liquidating Manager Agreement, (vi) the United States Settlement Agreement, (vii) procedures for the sale of the Excluded Assets, administration of the Excluded Liabilities and distributions to holders of Claims by the Liquidating LLC, (viii) the IHS/Lyric Settlement Agreement, and (ix) the settlement with the Premiere Group Creditors' Committee, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f)    Designation of Officers, Directors or Trustees (11 U.S.C. § 1123(a)(7)). Section 5.9(f) of the Plan and the representations on the record of the Confirmation Hearing with respect to the manner of selection of the Liquidating Manager and officers of the Reorganized Debtors are consistent with the interests of creditors, equity security holders, and public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

(g)    Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(h)    Bankruptcy Rule 3016(a). The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

7.     <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.

The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

a.     The Debtors are proper debtors under section 109 of the
       Bankruptcy Code.

b.     The Debtors have complied with applicable provisions of the
       Bankruptcy Code, except as otherwise provided or permitted by
       orders of the Bankruptcy Court.

c.     The Debtors have satisfactorily complied with the applicable
       provisions of the Bankruptcy Code, the Bankruptcy Rules, and the
       Solicitation Order in transmitting the Plan, the Disclosure
       Statement, the Ballots, and related documents and notices and in
       soliciting and tabulating votes on the Plan.

8.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have

proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying

section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts

and records of the IHS Reorganization Cases, the Disclosure Statement and the hearing thereon,

and the record of the Confirmation Hearing and other proceedings held in the IHS

Reorganization Cases.  The Plan was proposed with the legitimate and honest purpose of

maximizing the value of the Debtors' estates by providing the means through which the

Reorganized Debtors may emerge from chapter 11 as a viable operating enterprise.  The Plan is

the result of extensive arm's-length negotiations among the Debtors, the Creditors' Committee,

the Unofficial Senior Lenders' Working Group, the Premiere Group Creditors' Committee and

other parties in interest.

9.     <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

Any payment made or to be made by any of the Debtors for services or for costs and expenses in

or in connection with the IHS Reorganization Cases, or in connection with the Plan and incident to the IHS Reorganization Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

10.   Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. At the Confirmation Hearing, the Debtors disclosed the identity and affiliations of the persons proposed to serve as initial directors or officers of the Reorganized Debtors after confirmation of the Plan. In addition, the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy. The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed.

11.   No Rate Changes (11 U.S.C. § 1129(a)(6)). After confirmation of the Plan, the Reorganized Debtors' businesses will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the IHS Reorganization Cases or with respect to the Plan.

12.   Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis attached to the Disclosure Statement as Exhibit "D" and other evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

13.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  Classes 1, 3-A

through 3-D and 12 of the Plan are Classes of unimpaired Claims and Interests that are

conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

Classes 2, 4, 5, 6, 7, 8 and 9 and the holders of Other Secured Claims in Class 3-E through 3-K[3]

and all but one of the other voting subclasses in Class 3 (each of which is considered to be in a

separate subclass of Class 3), have voted to accept the Plan in accordance with section 1126(c)

and (d) of the Bankruptcy Code.  One subclass in Class 3, which is the subclass for the Other

Secured Claim of Vector Concepts, has voted to reject the Plan.  Classes 10, 11 and 13 are not

entitled to receive or retain any property under the Plan and, therefore, are deemed to have

rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although

section 1129(a)(8) has not been satisfied with respect to the three deemed rejecting Classes

(Classes 10, 11 and 13) or with respect to the separate subclass in Class 3 that voted to reject the

Plan (collectively, the "<u>Rejecting Classes</u>"), the Plan is confirmable because the Plan satisfied

section 1129(b) of the Bankruptcy Code with respect to the Rejecting Classes.

14.    <u>Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9))</u>.

The treatment of Administrative Expense Claims and Other Priority Claims pursuant to

Sections 2.1 and 4.1 of the Plan, respectively, satisfies the requirements of

sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims

pursuant to Section 2.4 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the

Bankruptcy Code.

---

[3]    Finova Capital Corporation ("<u>Finova</u>"), the holder of claims in Class 3-G, submitted a
Ballot voting to reject the Plan.  Pursuant to a settlement between the Debtors and Finova,
the details of which are set forth herein, Finova has now agreed that it and Class 3-G shall
be deemed to have accepted the Plan.

15.    <u>Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. At least one Class of Claims against the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

16.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or the Liquidating LLC, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

17.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. All fees payable under section 1930 of title 28 of the United States Code (the "<u>Quarterly Fees</u>"), as determined by the Bankruptcy Court, have been paid or will be paid pursuant to Section 12.1 of the Plan by the Debtors on or before the Effective Date. The Debtors and the Office of the United States Trustee (the "<u>UST</u>") have agreed as follows:

(a)    The Debtors shall pay to the UST by the Effective Date the undisputed amount of unpaid Quarterly Fees pursuant to 28 U.S.C. § 1930(a)(6) ("<u>Quarterly Fees</u>") that the Debtors contend have accrued prior to the Effective Date, and that payment of the foregoing Quarterly Fees shall be without prejudice to either the position of the UST that additional Quarterly Fees may be due or the position of the Debtors that no additional Quarterly Fees are due;

(b)    The Debtors shall deposit the unpaid and disputed amount of Quarterly Fees attributable to the pre-Effective Date period within 10 days of the Debtors' receipt

of the UST's calculation of the amount of those unpaid and disputed Quarterly Fees (to be determined in good faith by the UST), into a segregated, interest-bearing account earmarked for payment of Quarterly Fees at a bank reasonably acceptable to the UST (the "Debtors' UST Fee Account"). No withdrawals or transfers of funds from the Debtors' UST Fee Account shall be made until: (i) the amount of Quarterly Fees has been determined by a final non-appealable order, (ii) upon further order of this Court, or (iii) upon agreement by the UST and the Debtors or the Liquidating LLC;

(c)    The Reorganized Debtors (other than IHS) shall continue to pay to the UST the undisputed amount of unpaid Quarterly Fees attributable to the Reorganized Debtors (other than IHS) after the Effective Date, and shall continue to file operating reports for the Reorganized Debtors (other than IHS) with the UST until the IHS Reorganization Cases (other than with respect to IHS) are closed and finally decreed.  The Reorganized Debtors shall deposit the unpaid and disputed amount of Quarterly Fees attributable to the post-Effective Date period for the Reorganized Debtors (other than IHS) within 10 days of receipt of the UST's calculation of the amount of those unpaid and disputed Quarterly Fees (to be determined in good faith by the UST and as set forth above) into a segregated, interest-bearing account earmarked for payment of Quarterly Fees at a bank reasonably acceptable to the UST (the "Reorganized Debtors' UST Fee Account") attributable to the Reorganized Debtors (other than IHS) for the post-Effective Date period until the Reorganization Cases (other than with respect to IHS) are closed and finally decreed.

(d)    The Liquidating LLC shall pay to the UST the undisputed amount of unpaid Quarterly Fees attributable to IHS after the Effective Date, and shall continue to file operating reports for IHS with the UST until IHS' chapter 11 case is closed and finally decreed.

The Liquidating LLC shall deposit the unpaid and disputed amount of Quarterly Fees attributable to IHS for the post-Effective Date period within 10 days of receipt of the UST's calculation of the amount of those unpaid and disputed Quarterly Fees (to be determined in good faith by the UST and as set forth above) into a segregated, interest-bearing account earmarked for payment of Quarterly Fees at a bank reasonably acceptable to the UST (the "IHS UST Fee Account") attributable to IHS for the post-Effective Date period until IHS' chapter 11 case is closed and final decreed.

(e)    The UST reserves the right to require additional reports or information in order to, *inter alia*, determine the amount of Quarterly Fees due from the Debtors, the Reorganized Debtors (other than IHS) or IHS.

18.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 12.2 of the Plan is hereby modified to provide as follows: Upon the implementation of the Sale Transactions, on and after the Effective Date, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtors had obligated themselves to provide such benefits. Thus, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

19.    Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). Based upon the evidence proffered, adduced, or presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by section 1129(b)(1) and (2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the

Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

20. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as amended.

21. <u>Modifications to the Plan</u>. The modifications to the Plan set forth in this Order constitute technical changes and/or changes with respect to particular Claims by agreement with holders of such Claims, and do not adversely change the treatment of any other Claims or Equity Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

22. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Bankruptcy Court in these IHS Reorganization Cases, the Debtors, Alvarez & Marsal, Inc., any Disbursing Agent, the Creditors' Committee, the Unofficial Senior Lenders' Working Group, the Premiere Group Creditors' Committee and their respective members, officers, directors, employees, agents, counsel or other professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Court in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by

section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.7 of the Plan.

23.    <u>Assumption</u>. Section 8 of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of section 365(a) and (b) of the Bankruptcy Code. The assumption of those executory contracts and unexpired leases to be assumed on the Effective Date in accordance with the Plan is in the best interest of the applicable Debtor party to such contracts or leases, its estate, and all parties in interest in the IHS Reorganization Cases. The Plan and this Confirmation Order each adequately provides for the timely payment of cure amounts in Cash in accordance with section 365(b)(1) of the Bankruptcy Code.

24.    <u>Rejection</u>. The executory contracts and unexpired leases of the Debtors to be rejected on the Effective Date in accordance with the Plan are burdensome and, as such, the rejection thereof is in the best interest of the applicable Debtor party to such contracts or leases, its estate, and all parties in interest in the IHS Reorganization Cases.

25.    <u>Substantive Consolidation</u>. No creditor of any of the Debtors will be prejudiced by the substantive consolidation of the IHS Reorganization Cases to the extent set forth in the Plan; such substantive consolidation will benefit all creditors of the Debtors. As set forth in the Plan, with regard to Class 7, the Premiere Debtors will be separately consolidated with each other for purposes of effecting distributions to the holders of Allowed Premiere Unsecured Claims.

26.    <u>United States Settlement Agreement</u>. The compromise and settlement between the Debtors and the holders of United States Claims set forth in the United States Settlement Agreement included in the Plan Supplement and incorporated into the Plan (including

Doc #Confirmation Order.wpd                    17

the Corporate Integrity Agreement referred to therein) is hereby approved as a fair, prudent, and reasonable compromise of the controversies resolved by such settlement and is binding upon the signatories thereto, and the Debtors are authorized to enter into such agreement substantially in the form included in the Plan Supplement.

27.    <u>Premiere Group Settlement Agreement</u>.  The compromise and settlement between the Debtors and the Premiere Group Creditors' Committee incorporated into the Plan and in this Order, is hereby approved as a fair, prudent, and reasonable compromise of the controversies resolved by such settlement and is binding upon all entities affected thereby.

28.    <u>IHS/Lyric Settlement Agreement</u>.  The compromise and settlement reflected in the IHS/Lyric Settlement Agreement incorporated into the Plan, is hereby approved, as a fair, prudent and reasonable compromise of the controversies resolved by such settlement and is binding upon all entities affected thereby, and the Debtors are authorized to execute the IHS/Lyric Settlement Agreement substantially in the form annexed hereto as Exhibit "B".

29.    <u>Angell Action; Angell Injunction Action</u>.  The Debtors' agreement with Don G. Angell and related entities as described in the Plan, with respect to certain pending actions, is approved.

30.    <u>Sale Approval Order</u>.  The Sale Approval Order which approved the Sale Agreement and authorized the Debtors to implement the Sale Transactions consistent with the Sale Agreement, the Plan and the Confirmation Order has not been appealed, reversed, vacated, modified or stayed, remains in full force and effect and remains binding upon all entities affected thereby.

31.    <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

32.    <u>Retention of Jurisdiction</u>. The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section 11 of the Plan and section 1142 of the Bankruptcy Code.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

33.    <u>Technical Amendments</u>. The modifications and clarifications to the Plan set forth herein meet the requirements of sections 1127(a) and (c) of the Bankruptcy Code and such modifications and clarifications do not adversely change the treatments of the Claim of any creditor or Equity Interest of any holder thereof within the meaning of Bankruptcy Rule 3019, and no further disclosure, solicitation or voting is required.

34.    <u>Confirmation</u>. The Plan is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan Supplement and the Plan Documents are incorporated by reference into and are an integral part of the Plan and this Confirmation Order. Notwithstanding the foregoing, nothing contained herein shall constitute an approval of the Stand-Alone Transactions and shall be without prejudice to the Debtors later seeking approval thereof.

35.    <u>Objections</u>. All Objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits. The Debtors have agreed to modify or clarify the Plan as follows in order to resolve certain Objections:

(a)    With respect to the Objection of Finova Capital Corporation ("Finova"):

(1)    Section 4.3(b)(6) of the Plan shall be and hereby is amended and modified by deleting the text appearing therein in its entirety and replacing said text with the following text:

(6)    *Subclass 3-G (Secured Claim of Finova Capital Corporation (f/k/a Greyhound Financial Corporation -- Houston Hospital Facility)).* Subclass 3-G consists of the secured Claim of Finova Capital Corporation (f/k/a Greyhound Financial Corporation) ("Finova"), as assignee under the promissory note, dated December 30, 1994, in the principal sum of $10,000,000 (the "Houston Hospital Note"), between Integrated Health Services at Houston, Inc., as obligor and Greyhound Financial Corporation, as obligee, which is secured by the Debtors' interests in the IHS Hospital at Houston facility ("IHS at Houston"). On the Effective Date (or before such time, at the election of the Debtors), Finova will receive a cash payment ("Finova Payment") in the aggregate amount of $4,750,000, in full settlement and satisfaction of all Claims of Finova arising out of or related to the Houston Hospital Note and the other documents and instruments relating thereto, including without limitation, any Claims for principal, interests, fees or expenses.

(2)    Class 3-G under the Plan shall be deemed to have accepted the Plan notwithstanding anything to the contrary contained in the Ballot submitted by Finova or the election made by Finova under section 1111(b) of the Bankruptcy Code.

(b)    With respect to the Objection of Jay M. Felser and Felser Health Ventures, the Debtors have agreed that regardless of any provisions to the contrary, neither the Plan, nor this Order nor the Disclosure Statement will in any way modify, release, limit or be deemed in any way to modify, release or limit the liability of any non-Debtors which have been named as defendants in that certain civil action pending in the Circuit Court for Baltimore County, captioned as *Jay M. Felser and Felser Health Ventures, Inc., v. Integrated Health Services, Inc. and Monarch Properties, Inc., and Lyric Health Care, LLC,* case no. 03C-98-012297, or the liability of such non-debtor defendants' successors or assigns, from any claims or

Doc #Confirmation Order.wpd                         20

causes of action of Jay M. Felser and Felser Health Ventures, Inc. In addition, regardless of any

provisions to the contrary, neither the Plan, nor this Order nor the Disclosure Statement will in

any way revise, rescind, alter, impede or be deemed to in any way revise, rescind, alter, impede

the relief granted by Order of the United States Bankruptcy Court, dated May 5, 2002, titled

"Order Granting the Felser Parties' Motion for Relief from the Automatic Stay: Docket Nos.

6680 and 6717."

        (c)    With respect to the Objection filed by Ventas, Inc. and Ventas

Realty Limited Partnership (collectively, "Ventas"), Ventas' objection to the Plan shall be

resolved as follows: (a) any and all of Ventas' claims against the Debtors shall be deemed to be

an Allowed General Unsecured Claim in the aggregate amount of $1,200,000; (b) nothing in the

Plan, the Plan Documents or this Order will release claims that Ventas may have against non-

debtor third parties except as provided in Section 10.7 of the Plan, or divest jurisdiction from the

relevant court in connection with Ventas' pending action against non-debtor third parties and any

other action Ventas brings against any other non-debtor third party; (c) with respect to any claims

Ventas may have against members, officers, directors, employees, agents, counsel or other

professionals and subject to the limitations set forth in Section 10.7 of the Plan, Section 10.7 of

the Plan shall be deemed to release such claims to the extent such members, officers, directors,

employees, agents, counsel or other professionals acted solely in their capacities as members,

officers, directors, employees, agents, counsel or other professionals with respect to the Debtor

entities.

        (d)    With respect to the Objection filed by Emeritus Management LLC,

the Plan shall not be deemed to extinguish, waive or otherwise prejudice the rights of the AL

Investors Sarasota, LLC, AL Investors Orlando, LLC, AL Investors II Brandon, LLC, AL

Investors II Lakeland, LLC and Emeritus Management LLC (collectively, "Emeritus") under

section 553 of the Bankruptcy Code and any applicable law, including, but not limited to,

recoupment in respect of indebtedness owed by Emeritus to the Debtors.

        (e)      With respect to the Objection filed by Pacific Employers Insurance

Company *et al.*, the Debtors have agreed as follows:  Notwithstanding any other term or

provision in the Plan, this Order (i) is without prejudice to the rights, claims and/or defenses of

Pacific Employers Insurance Company, Century Indemnity Company (as successor to CIGNA

Specialty Insurance Company, formerly known as California Union Insurance Co.), Indemnity

Insurance Company of North America and ACE American Insurance Co. (collectively,

"Insurers") under the Debtors' insurance policies with the Insurers (the "Policies") and/or the

reservations of rights by Insurers as to any issues relating to the Policies (as such issues are set

forth in Insurers' Objections to Confirmation [Doc. No. 9349]; *provided, however*, that the

Insurers and the Debtors agree that to the extent section 365 of the Bankruptcy Code is

applicable, nothing in the Plan or this Order shall be deemed to constitute a rejection of the

Policies under section 365 of the Bankruptcy Code; (ii) confirms that all of the terms, conditions,

limitations and/or exclusions contained in the Policies shall remain in full force and effect;

(iii) confirms that the Debtors and the Reorganized Debtors shall remain as the insureds under

the Policies, and the Debtors, the Reorganized Debtors and the Insurers shall remain bound by all

of the terms, conditions, limitations and/or exclusions contained in the Policies; (iv) confirms

that the Policies, to the extent they so provide, shall not be assigned by the Debtors or the

Reorganized Debtors without Insurers' express written consent; (v) acknowledges that nothing in

the Plan shall be deemed to create any insurance coverage that does not otherwise exist, if at all,

under the terms of the Policies; and (vi) is without prejudice to any of Insurers' or the Debtors'

(or the Reorganized Debtors', if applicable) rights and/or defenses in any pending or subsequent litigation in which Insurers or the Reorganized Debtors may seek a declaration regarding the nature and/or extent of any coverage under the Policies.

      (f)      With respect to the Objection filed by Beal Bank ("Beal"), the Debtors have agreed that (i) with respect to the Other Secured Claim of Beal in Class 3-A, the Debtors and Beal will work together in good faith to reconcile an appropriate amount to be paid to Beal upon reinstatement of the Mortgage Note as provided in the Plan with respect to Class 3-A, provided that if the parties do not earlier reach an agreement with respect to such amount or otherwise agree, the issue will be scheduled for hearing at the Debtors' omnibus hearing on May 21, 2003; and (b) with respect to the Other Secured Claim of Beal in Class 3-K, the parties agree that the Debtors or the Reorganized Debtors shall surrender the Collateral securing the Treyburn Note, in full satisfaction and release of all Claims of Beal arising out of the Treyburn Note, that the automatic stay shall be modified by this Order so as to permit Beal to foreclose on the property, and the parties shall cooperate and act diligently and in good faith to transition the facility to Beal or its designee as soon as practicable after entry of this Order.

      (g)      With respect to the Objection filed by Intrepid America Minnesota, the Debtors have agreed as follows: If Intrepid's alleged administrative expense claim against certain of the Debtors is deemed an Allowed Administrative Expense Claim after the Effective Date of the Plan, such Allowed Administrative Expense Claim will be paid by the applicable Reorganized Debtor(s) no later than the first Business Day that is thirty (30) days after the claim becomes allowed.

(h)     With respect to the Objection filed by Great Oaks Nursing Home, Inc. ("Great Oaks"), the Debtors have agreed that the entry of this Order does not authorize the assumption of any leases for which Great Oaks is the lessor.

(i)     With respect to the Objection filed by the Wilkes & McHugh Tort Claimants (the "W&M Tort Claimants"), the Debtors have agreed to modify the Plan with respect to the W&M Tort Claimants as follows:  nothing in the Plan shall be construed as releasing claims of the W&M Tort Claimants against non-Debtor parties which relate to tort liability in connection with the provision of nursing home care.

(j)     With respect to the Objection filed by Ilene McCarroll, the Debtors have agreed to modify the Plan as follows: Notwithstanding anything to the contrary in the Plan, the treatment of Insured Claims set forth in section 4.6 of the Plan is not applicable to Tort Claims which arose after the Commencement Date, it being understood that (i) Tort Claims arising after the Commencement Date are not classified as General Unsecured Claims but are classified as Administrative Expense Claims, and (ii) Tort Claims arising after the Commencement Date, to the extent they are not covered by insurance but become Allowed Administrative Expense Claims, shall be treated in accordance with Section 2.1 of the Plan.

(k)     With respect to the Objection filed by Litchfield Investment Company, LLC ("Litchfield"), the Debtors have agreed to modify the Plan as follows:  Section 10.7 of the Plan shall not be construed to modify any rights (including setoff rights), claims, defenses or causes of action which Litchfield or the Debtors have against each other, as it relates to the litigations between them now pending in the Bankruptcy Court or the District Court.

(l)     With respect to certain Objections filed with respect to Section 10.7 (Exculpation) of the Plan, the Debtors have agreed to modify the Plan as follows:

Section 10.7 of the Plan (Exculpation) shall not be deemed to encompass acts or omissions solely related to the ordinary course conduct of the Debtors' businesses during the pendency of the IHS Reorganization Cases.

(m)    With respect to the Objections filed by a number of taxing authorities, the Plan shall be deemed to provide that holders of Allowed Priority Tax Claims under Section 2.4(a) of the Plan shall receive from the Liquidating LLC, Cash in an amount equal to such Allowed Priority Tax Claim, to be paid within thirty (30) days of the Effective Date or in the event the Priority Tax Claim constitutes a Disputed Claim as of the Effective Date, within thirty (30) days after such claim becomes an Allowed Priority Tax Claim.

(n)    With respect to the Objection of the State of Georgia, Department of Revenue ("Georgia"), the tax claims filed by Georgia shall be treated in accordance with the stipulation and order between the Debtors and Georgia to be entered by the Bankruptcy Court substantially contemporaneously herewith, and which is attached hereto as Exhibit "C".

(o)    With respect to the Objection of FSQ, Inc., such Objection is resolved pursuant to the terms of the Stipulation, dated May 7, 2003, between the Debtors and FSQ, Inc. (the "FSQ Stipulation"), which is hereby approved, and which is attached hereto as Exhibit "D", and the terms of which are incorporated herein by reference as if fully restated herein.

(p)    With respect to the objections filed by C. Taylor Pickett and Daniel J. Booth, and by Ronald L. Lord (collectively, the "Objecting Officers"), such Objections are resolved as follows: unless the Debtors, the Creditors' Committee and the Objecting Officers agree otherwise, the Court shall hold a hearing on June 19, 2003 at 11:30 a.m. for the purposes of (i) determining whether a reserve should be established by the Liquidating LLC for the benefit of

the Objecting Officers' alleged Administrative Expense Claims in connection with the Angell

Action, and if so, (ii) setting the amount of such reserve.

(q)    With respect to the Objection of Ladera Health Care Company, Las

Palomas Health Care Company and Rio Rancho Health Care Company (collectively, the "RR

Lessors"): The RR Lessors' Objection is resolved pursuant to and consistent with the terms of

the Stipulation among the RR Lessors, the Debtors (including but not limited to IHS Acquisition

No. 151, Inc. ("IHS 151")), ABE Briarwood Corp. ("Briarwood"), Trans Healthcare, Inc. and

THI Holdings, LLC, (the "RR Stipulation"), which Stipulation was set forth more fully on the

record at the Confirmation Hearing held in these cases on May 7, 2003, and is fully incorporated

herein by this reference, and nothing herein shall in any way impact or affect the rights retained

and provided to the RR Lessors pursuant to the Stipulation and the entry of this Order is without

prejudice to all such rights.

(r)    With respect to the Objection of HRES1 Properties Trust, the

Objection is overruled; provided however that as it pertains to HRES1 only, issues with respect

to adequate assurance of future performance of the HRES1 lease at issue, the applicability of

section 365 of the Bankruptcy Code, and the appropriate treatment of any alleged administrative

expense claim of HRES1 shall be adjourned to May 21, 2003 at 9:30 a.m.; provided further that

nothing set forth in this Order or the Plan is intended to modify or impair the rights and

obligations of the Debtors and HRES1 pursuant to prior orders of this Court or agreements

approved by this Court.

(s)    With respect to the Objection of Las Vegas Properties LLC, f/k/a

Cheyenne SNF, LLC ("Cheyenne"), the Objection is withdrawn pursuant to the terms of the letter

agreement between the Debtors and Cheyenne filed under certification of counsel on May 12, 2003, the terms of which are incorporated herein by this reference.

(t)    With respect to the Objection of the State of Missouri Department of Revenue ("Missouri"):

(1)    Section 10.7 (Exculpation) of the Plan shall not be deemed to operate as a release, discharge or exculpation of claims that Missouri may hold against any non-debtor third parties, including but not limited to officers and directors of the Debtors, or from any liability arising under the laws of the State of Missouri.

(2)    In the event that Missouri's Allowed Administrative Claims and Allowed Priority Tax Claims, if any, are not paid in accordance with the terms of the Plan, the Debtors will be in default of the Plan. Missouri shall provide the Liquidating LLC written notice of the default by mail. If the default is not cured within thirty (30) days after notification, the entire principal and accrued interest of such Allowed Claims shall at once become due and payable without further notice. Missouri may thereafter proceed with either or all of the following remedies: (a) enforce the entire amount of its claim under Missouri law; (b) exercise any and all of its rights and remedies under Missouri law; and (c) seek such relief as may be appropriate in this Court.

(3)    The Debtors agree that any non-filed tax returns shall be brought current and shall be filed within sixty (60) days after the Effective Date with the Missouri Department of Revenue, c/o Bankruptcy Unit, General Counsel's Office, 301 W. High Street, Room 670, P.O. Box 475, Jefferson City, MO 65105-0475.

(u)    With respect to the Objections filed by the Texas Comptroller of Public Accountants ("Texas Comptroller") and Texas Workforce Commission ("Texas Workforce Commission"):

(1)    With respect to the Objections filed by the Texas Comptroller, the Debtors have agreed that Allowed Priority Tax Claims held by the Texas Comptroller shall be treated under the Sale Transaction option pursuant to Section 2.4(a) of the Plan.

(2)    Sections 10.6 (Injunction Against Suits Against IHS under the Sale Transactions) and 10.7 (Exculpation) of the Plan, or any other provision of the Plan, shall not be deemed to operate as a release, discharge or exculpation

of any claims that the Texas Comptroller may hold against any non-debtor third-parties, including but not limited to the officers and directors of the Debtors.

   (3) A failure by the Debtors to make a payment to the Texas Comptroller or the Texas Workforce Commission on account of its respective Allowed Priority Tax Claim pursuant to the terms of the Plan shall be a default under the Plan. If the Debtors fail to cure such default within thirty (30) days after receipt of written notice of default, the Texas Comptroller or the Texas Workforce Commission, as the case may be, may (a) enforce the entire amount of the claim; (b) exercise any and all rights and remedies such taxing authority may have under applicable non-bankruptcy law; and/or (c) seek such remedies as may be appropriate in this Court.

   (v) With respect to the Objections filed by certain Texas counties (collectively, the "Texas Taxing Authorities"):

   (1) Any Allowed Other Secured Claims of the Texas Taxing Authorities, to the extent that such claims are oversecured, shall be entitled to post-petition interest at 7% per annum, such interest to accrue through the date of payment of the Claim (including any period during which such claim constitutes a Disputed Claim), to be paid within thirty (30) days after the Effective Date, or if the Claim is a Disputed Claim, within thirty (30) days after the entry of the order allowing such Claim.

   (2) All allowed and enforceable liens securing any Other Secured Claims of the Texas Taxing Authorities, whether arising prepetition or postpetition, shall remain in full force and effect notwithstanding anything to the contrary contained in the Plan until the allowed secured claims secured by such liens have been paid in full in accordance with the Plan.

   (3) With respect to any administrative expense claims asserted by the Texas Taxing Authorities, such authorities, shall not be relieved of the obligation to file an administrative claim in accordance with any order of the Bankruptcy Court establishing such requirement.

   (w) With respect to the Objection filed by the United States on its behalf by the Internal Revenue Service ("IRS"):

   (1) The Priority Tax Claims held by the IRS, to the extent such claims constitute a Disputed Claim, shall be paid within thirty (30) days after the entry of the order allowing such claims. The Debtors have also agreed that such claims are entitled to interest at 6% per annum, such interest to accrue as of the Effective Date of the Plan through the payment of such claims.

28

(2)     Nothing contained in the Plan shall affect the allowance and/or priority of any claim for non-pecuniary loss penalties asserted by the IRS under applicable bankruptcy and non-bankruptcy law, as to which the rights of the IRS and the Debtors are expressly reserved.

(3)     The Plan shall not be deemed to extinguish, waive or otherwise prejudice the rights of the IRS under section 553 of the Bankruptcy Code in respect of pre-Commencement Date indebtedness owed by the IRS to the Debtors.

(4)     In the event that the IRS's Allowed Priority Tax Claims are not paid in accordance with the terms of the Plan, the Debtors will be in default of the Plan. If such default is not cured within thirty (30) days after the Liquidating LLC's receipt of notification of such default from the IRS, the entire principal and accrued interest of any Allowed Priority Tax Claims shall at once become due and payable without further notice. IRS may thereafter proceed with either or all of the following remedies: (a) enforce the entire amount of its claim under applicable federal law, (b) exercise any and all its rights and remedies under applicable federal law, and (c) seek such relief as may be appropriate in this Court.

(5)     Section 10.7 (Exculpation), or any other provision of the Plan, shall not be deemed to operate as a release, discharge or exculpation of any claims the IRS may hold against any non-debtor third-parties, including but not limited to the officers and directors of the Debtors.

36.     Plan Supplement; Other Plan Documents.  The documents contained in the Plan Supplement and any other Plan Documents and any amendments, modifications, and supplements thereto, all documents and agreements related thereto or to consummation and implementation of the Plan and any other documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtors and the Liquidating LLC are authorized and approved, including, but not limited to, (a) the United States Settlement Agreement, (b) the Liquidating LLC Agreement, (c) the Liquidating Manager Agreement, (d) the Sale Agreement, and (e) the IHS/Lyric Settlement Agreement.  Without need for further order or authorization of the Bankruptcy Court,

but subject to paragraph 76 herein, the Debtors, the Reorganized Debtors and the Liquidating
LLC are authorized and empowered to make any and all modifications to any and all documents
included as part of the Plan Supplement or to any other Plan Documents that do not materially
modify the terms of such documents and are consistent with the Plan.

       37.   Sale Transactions.

       (a)   The Debtors are authorized to take all steps, and to execute and
deliver all documents, necessary to implement the Sale Transactions in accordance with Section
5.9 of the Plan, without the necessity of shareholder approval required under any applicable law,
including, without limitation, sections 162(m) and 422(b)(1) of the Internal Revenue Code of
1986, as amended.

       (b)   IHS shall be authorized to form the LTC Subsidiary and the
Therapy Subsidiary in accordance with the Sale Agreement.

       (c)   Simultaneously with the Closing, IHS shall be authorized to
(i) contribute and assign to the LTC Subsidiary all of its assets and liabilities not described in
clause (ii) below, including without limitation the capital stock of all of the Subsidiaries (as
defined in the Sale Agreement) that conduct IHS's long-term care business and any and all past,
current and future PLGL Claims arising after the Commencement Date, but excluding the
Excluded Assets and the Excluded Liabilities, and (ii) contribute and assign to the Therapy
Subsidiary all of its assets and liabilities that relate to IHS's contract rehabilitation therapy
business and mobile x-ray services business, including without limitation the capital stock of all
of the Subsidiaries that conduct IHS's contract rehabilitation therapy business, but in each case
excluding the Excluded Assets and the Excluded Liabilities.

38.    IHS/Lyric Settlement Agreement. The parties to the IHS/Lyric Settlement Agreement are authorized and directed to enter into the IHS/Lyric Settlement Agreement and perform their agreements and obligations thereunder, and take all necessary steps to enter into and perform the IHS/Lyric Settlement Agreement and their agreements and obligations thereunder, and any and all assignments, transfers or the like of any rights, title, interests or property thereunder, including, without limitation, the transfer of IHS's membership interests in both Lyric and Claremont (collectively, the "Lyric Transferred Property"), shall be free and clear of all Claims, liens, encumbrances, charges, and other interests (collectively, "Lyric Related Interests"), and any and all persons, entities or the like shall be enjoined from asserting any Lyric Related Interests against the Lyric Transferred Property.

39.    Liquidating LLC.

(a)    The Debtors and the Liquidating Manager are authorized to act as organizers of the Liquidating LLC and to take such steps as are reasonably necessary or appropriate to ensure that the Liquidating LLC shall be formed and in existence as of the Effective Date in accordance with the terms of the LLC Agreement.

(b)    The Liquidating LLC shall comply with all of its obligations under the LLC Agreement as well as those arising under the Plan and by operation of law.

(c)    On the Effective Date, the Debtors and their estates shall transfer and assign to the Liquidating LLC (i) all assets of the Debtors and their estates which are neither distributed nor abandoned by the Debtors on the Effective Date, including, without limitation, all Cash and Cash proceeds of the Sale Agreement, all Excluded Assets (including the claims and Causes of Action that are or may be asserted in the Compensation Action) and all Excluded Subsidiaries, and (ii) the Excluded Liabilities, subject to their treatment under the Plan.

(d)     The Liquidating LLC will hold and administer the following assets: (i) the Excluded Administrative Expense Claims Reserve, (ii) the Disputed Other Priority Claims Account, (iii) the Disputed Other Secured Claims Account, (iv) the Disputed Priority Tax Claims Account, (v) the Unclaimed Distributions Reserve, (vi) the Expense Reserve Account, (vii) the Disputed Premiere Unsecured Claims Account, (viii) the Disputed General Unsecured Claims Reserve, (ix) the 1999 Insured Tort Claims Escrow, (x) the Distribution Reserve Account, (xi) all Debtors' Claims, (xii) the Wind-Up Reserve, (xiii) any other reserves that may be established by the Court, and (xiv) any other assets of the Debtors that are neither abandoned nor distributed on the Effective Date.

(e)     On the Effective Date, or as soon thereafter as reasonably practicable, each holder of an Allowed Claim entitled to receive Membership Interests under the Plan shall:  (i) be admitted to the Liquidating LLC as a member of the Liquidating LLC, (ii) become bound by the Liquidating LLC Agreement, and (iii) receive a Membership Interest in the Liquidating LLC conferring membership in the Liquidating LLC and representing the rights conferred upon such holder by the Plan.  No other entity, including the Debtors, shall have any interest, legal, beneficial, or otherwise, in the Liquidating LLC or its assets.

(f)     On the Effective Date, the Claims or Causes of Action in the Compensation Action shall be deemed to have been irrevocably transferred by the Debtors' estates to the Liquidating LLC.

40.     <u>Liquidating Manager.</u>

(a)     Eureka is appointed to serve as the Liquidating Manager.  To the extent that Eureka designates an affiliate to serve as the Liquidating Manager, or the Liquidating Manager is removed or replaced in accordance with the terms of the Liquidating LLC

Agreement, notice of such designation, removal or replacement shall be filed with the

Bankruptcy Court by the succeeding Liquidating Manager and served upon parties that have filed

notices of appearance in the IHS Reorganization Cases.

       (b)    The Liquidating Manager shall be deemed the representative of the

estate under section 1123(b)(3)(B) of the Bankruptcy Code, and shall have all rights associated

therewith. Pursuant to the terms of the Plan, Liquidating LLC Agreement (a/k/a the Operating

Agreement) and the Liquidating Manager Agreement, the Liquidating Manager shall have all

duties, powers, and standing and authority necessary to implement the Plan and to administer and

liquidate the assets of the Liquidating LLC for the benefit of holders of Allowed Claims,

including, without limitation the powers set forth in Section 5.9(g) of the Plan.

       (c)    On the Effective Date, the Liquidating Manager shall establish the

Distribution Reserve Account, in which the Liquidating Manager shall deposit (i) all Cash and

cash equivalents received from the Debtors on the Effective Date; and (ii) any net realized Cash

proceeds received by the Liquidating Manager thereafter from, among other things, the

liquidation of non-Cash assets and prosecution of the Debtors' Claims. On the Effective Date,

the Liquidating Manager shall establish the Excluded Administrative Expense Claims Reserve,

the Disputed Other Priority Claims Account, the Disputed Other Secured Claims Account, the

Disputed Priority Tax Claims Account, the Disputed General Unsecured Claims Reserve, the

Disputed Premiere Unsecured Claims Account, the Unclaimed Distribution Reserve and the

Expense Reserve Account and any other reserves that may be established by the Court, and shall

transfer funds from the Distribution Reserve Account to such respective Reserves and Accounts

as provided in Section 6.2 of the Plan.

(d)    The Liquidating Manager shall maintain a registry of the Membership Interests in the Liquidating LLC.

(e)    As soon as possible after the Effective Date, but in no event later than sixty (60) days thereafter, the Liquidating Manager shall determine, in good faith, the value of the assets (other than Cash) transferred to the Liquidating LLC under the Plan. The value determined by the Liquidating Manager shall be conclusive absent manifest error. All parties (including, without limitation, the Debtors, the Liquidating Manager and the holders of Allowed Claims) shall use this valuation for all federal income tax purposes. This valuation shall be made available by the Liquidating Manager upon written request of the holders of Membership Interests or their assigns.

(f)    The Liquidating Manager is authorized to make all distributions required under the Plan in accordance with Section 6.2 of the Plan.

(g)    Every one hundred twenty (120) days after the Effective Date, the Liquidating Manager shall provide to the Post-Confirmation Committee and its counsel a report detailing the calculation of Cash for the immediately preceding 120-day period (including a summary of costs incurred, any receipts of the Liquidating LLC, and a summary of disbursements from, or increases in the amount of, any Reserve). A copy of such report shall be furnished to any holder of a Membership Interest in the Liquidating LLC that delivers to the Liquidating Manager a written request for a copy of such report.

(h)    The Liquidating Manager shall be responsible for winding up the affairs of any Debtor and any Non-Debtor Affiliate transferred to the Liquidating LLC on or after the Effective Date which is not sold, transferred or otherwise disposed of by the Liquidating Manager, including but not limited to preparing and filing final tax returns, filing dissolution

documents pursuant to applicable law, paying any franchise taxes and other fees that are due in connection with such dissolution, and taking any other actions that are necessary to wind up the ·affairs of the Debtors and such Non-Debtor Affiliates.

(i)    In accordance with Section 6.2 of the Plan, as soon as practicable after the Final Liquidating LLC Distribution Date, the Liquidating Manager shall wind up the affairs of the Liquidating LLC, file final tax returns, arrange for storage of its records and dissolve it pursuant to applicable law. As soon as practicable thereafter, the Liquidating Manager shall file with the Bankruptcy Court a final report of distributions and perform such other duties as are specified in the Plan, whereupon the Liquidating Manager shall have no further duties under the Plan.

(j)    On the Final Liquidating LLC Distribution Date, the Liquidating Manager shall, *inter alia*, request the Bankruptcy Court to enter an order closing the IHS Reorganization Cases, to the extent not previously closed.

41.    Post-Confirmation Committee. PharMerica, Deutsche Bank AG (New York Branch) and General Electric Capital Corporation are appointed as the members of the Post-Confirmation Committee.  The Post-Confirmation Committee is authorized to carry out its duties and functions as set forth in the Plan, including but not limited to the prosecution and/or settlement of the Compensation Action. The Post-Confirmation Committee may employ, without further order of the Court, professionals to assist it in carrying out its duties, including any professionals retained in the IHS Reorganization Cases, and the Liquidating Manager shall pay the reasonable costs and expenses of the Post-Confirmation Committee, including reasonable professional fees, in the ordinary course within ten (10) days of invoicing, without submission to or approval by the Bankruptcy Court.

42.    <u>Plan Classification Controlling</u>. The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtors, the Reorganized Debtors, the Liquidating LLC, the Liquidating Manager or the Disbursing Agent.

43.    <u>Binding Effect</u>. The Plan and its provisions shall be binding upon the Debtors, the Reorganized Debtors, the Liquidating LLC, the Liquidating Manager, the Disbursing Agent, any entity acquiring or receiving property as a distribution under the Plan, and any holder of a Claim against or Equity Interest in the Debtors, including all governmental entities, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.

44.    <u>Transmittal of Materials; Notice</u>. The transmittal and service of the Disclosure Statement, the Plan, the Ballots, the Solicitation Order, the Confirmation Hearing Notice, and the Schedule of Assumed Leases and Executory Contracts, as set forth in the Schmitz Declaration and the Reyes Declarations are hereby approved as proper notice. The publication of the Confirmation Hearing Notice as set forth in the Trykoski Certificate is hereby approved as proper notice.

45.    <u>Vesting of Assets (11 U.S.C. § 1141(b), (c))</u>. Except as otherwise provided in the Plan, in accordance with Section 10.1 of the Plan, upon the Effective Date, all

property of the Debtors' bankruptcy estates shall vest in the Liquidating LLC or the Reorganized

Debtors, as applicable, free and clear of all Claims, liens, encumbrances, charges, and other

interests not specifically contemplated by the Plan to either survive the IHS Reorganization

Cases or to be created or granted in connection therewith. From and after the Effective Date, the

Liquidating LLC or the Reorganized Debtors, as applicable, may use, acquire, and dispose of

property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all

respects as if there were no pending cases under any chapter or provision of the Bankruptcy

Code, except as provided in the Plan.

46.     Corporate Existence. Consistent with Section 5.1 of the Plan, except as

otherwise provided in the Plan, each Debtor will, as a Reorganized Debtor, continue to exist after

the Effective Date as a separate corporate entity, with all the powers of a corporation under

applicable law and each is authorized to take any action or exercise any right to alter or terminate

such existence (whether by merger, dissolution, or otherwise) under applicable law.

47.     Assumption of Executory Contracts and Unexpired Leases (11 U.S.C.

§§ 365 and 1123(b)(2)). Except as provided in paragraph 49(b) of this Order, pursuant to

Section 8.1 of the Plan and sections 365(a) and 1123(b)(2) of the Bankruptcy Code, each

applicable Debtor that is a party to an unexpired lease or executory contract that is either (a)

listed on the Schedule of Assumed Leases and Executory Contracts and have not been removed

from such Schedule by amendment prior to the Effective Date (it being the understanding of the

Debtors and the Purchaser that the Schedule of Assumed Leases and Executory Contracts cannot

be amended without the consent of both the Debtors and the Purchaser), or (b) the subject of a

motion pending as of the Effective Date to assume such executory contracts or unexpired leases,

is authorized to assume, effective on the Effective Date, such executory contract or unexpired

lease, respectively; *provided* that nothing contained in the foregoing shall authorize the assumption of any contract or lease or the determination of any cure amount which is the subject of motion pending as of the Effective Date for which a written objection has been filed by a party to such contract or lease (each, an "Executory Contract/Lease Objection"), including without limitation Great Oaks, Rio Rancho Healthcare Company, Las Palomas Healthcare Company, Ladera Healthcare Company, and HRES1 Properties Trust; and provided further that as to any unexpired leases that are the subject of an Executory Contract/Lease Objection, the Debtors' time within which to assume or reject such unexpired leases shall be extended to the earlier to occur of (i) the date that the applicable Debtor (or Reorganized Debtor) and the non-debtor party to such lease agree in writing to the assumption by the Debtor (or Reorganized Debtor) of such lease to which such Debtor (or Reorganized Debtor) is a party; and (ii) the entry of a Final Order of the Bankruptcy Court that approves or denies the motion that is subject to the applicable Executory Contract/Lease Objection.

48. Cure Amounts in Connection with Assumption. With respect to each such executory contract or unexpired lease assumed by a Reorganized Debtor, any monetary amounts required as cure payments shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash as soon as practicable after, and in no event later than the later of (i) thirty (30) days after the Effective Date; and (ii) thirty (30) days after the entry of a Final Order of the Court determining such cure amount, or upon such other terms as the parties to such executory contracts or unexpired leases otherwise may agree. Except as provided otherwise in this Order or on the record at the Confirmation Hearing, each of the cure amounts set forth in the Schedule of Assumed Leases and Executory Contracts shall be deemed to constitute the full and final payment obligations of the applicable Debtors necessary to cure

defaults under the respective leases and executory contracts being assumed pursuant to this Order. In the event of a dispute regarding the amount of any cure payment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such dispute.

       49.   <u>Rejection of Executory Contracts and Unexpired Leases (11 U.S.C.</u> <u>§§ 365(a) and 1123(b)(2))</u>. Each applicable Debtor is authorized pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code to reject, and shall be deemed to have rejected, as of the Effective Date, those executory contracts or unexpired leases (a) which are not listed on the Schedule of Assumed Leases and Executory Contracts and Cure Amounts (b) which were originally listed on the Schedule of Assumed Leases and Executory Contracts but were removed by amendment to such schedule prior to the Effective Date, (b) which have not been assumed (or assumed and assigned) with the approval of the Bankruptcy Court as of the Effective Date, or (c) which are not the subject of a motion to assume the same pending as of the Effective Date. The Reorganized Debtors shall have no liability under such rejected contracts and leases except as is specifically provided in the Plan. Notwithstanding any of the foregoing or anything herein to the contrary:

       (a)   This provision shall not apply to any Medicare Part B Agreements identified in the Schedule of Assumed Leases and Executory Contracts.

       (b)   On March 18, 2002, the Court entered a stipulation and order (the "March 2002 Stipulation") by and among certain of the Debtors and THCI Company, LLC. On April 17, 2003, certain of the Debtors filed a Motion to reject nine leases with THCI (the "Rejection Motion"). On April 17, 2003, THCI filed a Motion of THCI Company, LLC to Compel Debtors' Entry Into Master Lease Agreement in Compliance with Stipulation and Order