IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | ) ) | |
| | ) | CASE NO. 00-389 (MFW) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 04-1262 (GMS) |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC. and ABE BRIARWOOD CORP., | ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF, INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA'S RESPONSE TO MOTION OF
IHS LIQUIDATING LLC TO INTERVENE AND RESPONSE
TO THE MOTION OF INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA TO AMEND THE COMPLAINT [DI_17]**

Indemnity Insurance Company of North America ("**IICNA**"), by its attorneys, responds to the Motion of IHS Liquidating LLC to Intervene and Response to the Motion of Indemnity Insurance Company of North America to Amend the Complaint (the "**Motion**"), as follows:

**Preliminary Statement**

1.      The Motion attempts to mischaracterize the subject matter of this insurance contract interpretation dispute as a Plan distribution and administration issue and avoid the operation of the "first filed" rule. While IICNA has no opposition to IHS Liquidating LLC's ("**Liquidating LLC**") intervention as a party in this action, there is, however, no basis for

Liquidating LLC's request to prevent adjudication of issues relating to the 1999 IICNA Policy (as defined herein) from proceeding in this pending action. The 1999 IICNA Policy dispute involves state law insurance contract interpretation issues only. Liquidating LLC's mischaracterization of the 1999 IICNA Policy dispute as "issues that are critical to the implementation of the Plan ... and the administration of Debtors' bankruptcy cases," Motion ¶ 2, is a thinly veiled attempt to manufacture a basis for a core proceeding where none otherwise exists.[1]

2.       Given the non-core nature of the 1999 IICNA Policy dispute, (i) IICNA's Motion to Amend Complaint (DI 15) should be granted thereby adding the 1999 IICNA Policy dispute to this adversary proceeding, (ii) IICNA's motion to withdraw the reference (DI 6) as to Liquidating LLC's complaint in Adversary Proceeding No. 05-51318 (the "**Liquidating LLC Adversary**") should be granted, and (iii) the Liquidating LLC Adversary should be consolidated with this first-filed action. This relief will permit full and efficient adjudication of these insurance contract interpretation disputes in one action in a court that may appropriately determine such non-core matters.

**Relevant Background**

3.       By Findings Of Fact, Conclusions Of Law, And Order Under 11 U.S.C. § 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming Amended Joint Plan Of Reorganization Of Integrated Health Services, Inc. And Its Subsidiaries Under Chapter 11 Of The Bankruptcy Code dated May 12, 2003 (the "**Confirmation Order**"), the Bankruptcy Court confirmed the Amended Joint Plan Of Reorganization Of Integrated Health Services, Inc. And Its Subsidiaries Under Chapter 11 Of The Bankruptcy Code, dated March 13, 2003 (the "**Plan**").

---

[1] IICNA most strongly disagrees with and objects to Liquidating LLC's repeated inappropriate attempts to disparage IICNA with suggestions that it engaged in sharp litigation tactics and/or was illegitimately motivated. There is no need to distract this Court from an adjudication of this matter strictly on its merits, and IICNA will not do so.

4. IICNA had filed objections to confirmation of the Plan [DI 9349] because, *inter alia*, it prejudiced IICNA's rights under the 1999 IICNA Policy. IICNA's objections to the Plan were resolved by the inclusion in the Confirmation Order of the following reservation of IICNA's rights:

> (e) With respect to the Objection filed by Pacific Employers Insurance Company et al., the Debtors have agreed as follows: Notwithstanding any other term or provision in the Plan, this Order (i) is without prejudice to the rights, claims and/or defenses of Pacific Employers Insurance Company, Century Indemnity Company (as successor to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Co.), Indemnity Insurance Company of North America and ACE American Insurance Co. (collectively, "<u>Insurers</u>") under the Debtors' insurance policies with the Insurers (the "<u>Policies</u>") and/or the reservation of rights by Insurers as to any issues relating to the Policies (as such issues are set forth in Insurers' Objections to Confirmation [Doc. No. 9349]; provided, however, that the Insurers and the Debtors agree that to the extent section 365 of the Bankruptcy Code is applicable, nothing in the Plan or this Order shall be deemed to constitute a rejection of the Policies under section 365 of the Bankruptcy Code; (ii) confirms that all of the terms, conditions, limitations and/or exclusions contained in the Policies shall remain in full force and effect; (iii) confirms that the Debtors and the Reorganized Debtors shall remain as the insureds under the Policies, and the Debtors, the Reorganized Debtors and the Insurers shall remain bound by all of the terms, conditions, limitations and/or exclusions contained in the Policies; (iv) confirms that the Policies, to the extent they so provide, shall not be assigned by the Debtors or the Reorganized Debtors without Insurers' express written consent; (v) acknowledges that nothing in the Plan shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Policies; and **(vi) is without prejudice to any of the Insurers' or the Debtors' (or the Reorganized Debtors', if applicable) rights and/or defenses in any pending or subsequent litigation in which Insurers or the Reorganized Debtors may seek a declaration regarding the nature and/or extent of any coverage under the Policies.**

Confirmation Order, ¶35(e) (emphasis added). Accordingly, a coverage dispute regarding the 1999 IICNA Policy was clearly contemplated in the Plan confirmation process.

-3-

5.  IICNA issued an Excess Liability Catastrophe Policy, No. XLXG19524139 to IHS for the policy period January 1, 1999 to January 1, 2000, with limits of liability insurance of $50,000,000 for each occurrence, and $50,000,000 in the aggregate, in excess of underlying insurance limits of $50,000,000 each occurrence/$50,000,000 aggregate which in turn is excess of underlying insurance or retained limit (the "**1999 IICNA Policy**").

6.  By order entered October 14, 2004 (DI 5), the Bankruptcy Court held the subject matter of this adversary proceeding is non-core. On December 2, 2004 (DI 7), this Court entered an order withdrawing the reference to the Bankruptcy Court with respect to this adversary proceeding.

7.  By the pending motion to amend the complaint in this adversary proceeding, IICNA seeks to include another count in its complaint seeking, *inter alia*, a declaration that unless and until the limits of IHS' underlying insurance, "have been exhausted by the actual payment of claims against IHS during the relevant policy period, IICNA owes no duty under its 1999 IICNA Policy to indemnify and defend IHS for the 1999 Claims or any other claims otherwise occurring within the relevant policy period." This additional request for relief relates to the same facts and circumstances underlying this insurance contract interpretation dispute that the Bankruptcy Court has determined to be non-core.

8.  The complaint in the Liquidating LLC Adversary similarly seeks, *inter alia*, a declaration that the 1999 IICNA Policy "obligates IICNA to pay covered professional liability claims which have been liquidated in amount by judgment or settlement to the extent that such liquidated claims are in excess of $50 million per occurrence or $50 million in the aggregate, whether or not the applicable per occurrence or aggregate limit of the Debtors' primary insurance

coverage has been paid." Accordingly, both this adversary proceeding and the Liquidating LLC Adversary clearly seek adjudication of insurance contract interpretation disputes.

## Relief Requested

### A. The 1999 IICNA Policy Dispute Is A Non-Core Matter.

9. Liquidating LLC's argument that the 1999 IICNA Policy contract interpretation dispute is a core matter is simply wrong. In determining whether a matter is core, a court should first consult the non-exclusive list of fifteen examples of core proceedings set forth at 28 U.S.C. § 157(b)(2). *See Halper*, 164 F.3d at 836; *G-I Holdings, Inc. v. Hartford Accident & Indem. Co. (In re G-I Holdings, Inc.)*, 278 B.R. 376, 380 (Bankr. D.N.J. 2002) (finding that environmental insurance coverage action bore no resemblance to examples of core proceedings under 28 U.S.C. § 157(b)). Despite Liquidating LLC's attempt to mis-characterize its nature, the subject matter of the 1999 IICNA Policy dispute does not fall within any of the enumerated categories. Therefore, consideration of the Third Circuit's test for a core proceeding is required.

10. The Third Circuit has held that a core proceeding is one that either (1) invokes a substantive right provided by title 11 or (2) by its nature, could arise only in the context of a bankruptcy case. *Corestates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 196 (3rd Cir. 1999)(*quoting Torkelson v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1178 (3rd Cir. 1996)); *Halper*, 164 F.3d at 836; *G-I Holdings*, 278 B.R. at 381; *In re Donnington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 758 (D.N.J. 1996). "Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *Trans*

*World Airlines v. Ichan (In re Trans World Airlines, Inc.)*, 278 B.R. 42, 50 (Bankr. D. Del. 2002), quoting *In re United States Brass Corp.*, 110 F.3d 1261 (7th Cir. 1997).[2]

11.     ***A declaratory judgment action against a debtor to determine rights to insurance coverage under an insurance contract is not a core proceeding.***  *See In re Amatex Corp.*, 107 B.R. 856, 863 (E.D.Pa. 1989), *aff'd*, 908 F.2d 963 (3d Cir. 1991). *See also United States Brass*, 110 F.3d at 1268 (reasoning that "the right to insurance coverage is a creation of state contract law and one that could be vindicated in an ordinary breach of contract suit if the insured were not a bankrupt"); *Allied Prod. Corp. v. Hartford Accident & Indem. Co.*, 2003 U.S. Dist. LEXIS 2596, *5 (N.D. Ill. Feb. 24, 2003)(withdrawing the reference in an adversary proceeding regarding the determination of insurance coverage, stating "The court fails to see how the insurance dispute at the heart of the adversary proceeding arises is in any way related to the Bankruptcy Code."); *G-I Holdings*, 278 B.R. at 380 (action by debtor against insurers to determine environmental insurance coverage is non-core); *In re Ramex International, Inc.*, 91 B.R. 313 (E.D. Pa. 1988) (trustee's action for declaratory judgment under insurance policy is non-core).  The 1999 IICNA Policy dispute exclusively involves state law insurance contract interpretation issues which could be, and would have been, vindicated in an ordinary breach-of-contract suit absent the bankruptcy case.  Accordingly, the 1999 IICNA Policy dispute is non-core.[3]

12.     Although resolution of the 1999 IICNA Policy dispute may impact the size of a debtor's estate, that fact is immaterial to the core/non-core analysis.  *United States Brass*, 110

---

[2] This distinction strongly resembles the Third Circuit's test: the claim is core if it "invokes a substantive right provided by [the Bankruptcy Code] or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Torkelson,* 72 F.3d at 1178.

[3] Significantly, in adjudicating the National Union Adversary Proceeding, the Bankruptcy Court relied entirely on principles of contract interpretation, not substantive bankruptcy law. *See* September 16, 2003 Transcript of Hearing in Adversary Proceeding No. 03-52081 (DI 18).

F.3d. at 1269 (explaining that the "impact of a claim on the size of the debtor's estate is a criterion for whether a claim is related to the bankruptcy and is therefore a non-core proceeding"); *Phar-Mor v. Coopers & Lybrand*, 22 F.3d 1228, 1239 n.19 (3d Cir. 1994) (explaining that a breach of contract action that may bring property into the estate "is precisely the type of proceeding that is non-core and outside the power of the bankruptcy court to adjudicate"); *Donnington, Karcher*, 194 B.R. at 759 (holding that the possibility of a substantial recovery does not render a proceeding core). Thus, even though an action seeking insurance coverage declarations may impact the size of the debtor's estate, that factor is irrelevant to the Third Circuit's test for finding core jurisdiction over a proceeding. *G-I Holdings*, 278 B.R. at 382.

13. Under the foregoing analysis, the 1999 IICNA Policy dispute is non-core. In the first instance, to the extent the insured has pre-petition rights to insurance coverage under the 1999 IICNA Policy, its rights are state-law created; they do not – and cannot – spring from bankruptcy law. The Bankruptcy Code merely provides a procedural mechanism through which those rights will be determined. *United States Brass*, 110 F.3d at 1268. Secondly, as in *United States Brass*, the key dispositive issues do not revolve around ownership of insurance policies (*i.e.*, whether the policies themselves are assets of the estate) or the mechanics of the distribution of policy proceeds, if any. Rather, the issues concern the scope of the insurance coverage and whether the 1999 IICNA Policy covers certain claims against IHS, *i.e.*, purely state law contract interpretation issues. Finally, while resolution of these insurance contract interpretation issues may ultimately impact the size of IHS' estate, the 1999 IICNA Policy dispute is not the "linchpin" of the reorganization effort. Indeed, considering that the Plan has long since been consummated, the relatively limited economic scope of this dispute can hardly be considered the

"linchpin" of the reorganization effort. Incidental impact on the size of the estate does not make the 1999 IICNA Policy dispute core. *See Phar-Mor*, 22 F.3d at 1239 n.19; *G-I Holdings*, 278 B.R. at 384; *Donnington, Karcher*, 194 B.R. at 759. Therefore, the 1999 IICNA Policy dispute is a non-core matter that is, at most, only "related" to IHS' bankruptcy case.

14.     The fact that the 1999 IICNA Policy was issued pre-petition further supports the conclusion that any dispute with respect to it is non-core. *G-I Holdings,* 278 B.R. at 381-82; *Donnington, Karcher*, 194 B.R. at 758 (disputes regarding pre-petition insurance policies are non-core, whereas claims arising under post-petition policies may in some instances be core). Other courts have held that actions to determine rights to insurance coverage under policies issued pre-petition are non-core. *Beard v. Braunstein*, 914 F.2d 434, 455 (3d Cir. 1990); *Ramex Int'l*, 91 B.R. at 315 (trustee's action for declaratory judgment under an insurance policy issued pre-petition is non-core).

### B.     The 1999 IICNA Policy Dispute Should Proceed In The District Court.

15.     Title 28, section 157(d) of the United States Code contemplates that a district court should withdraw the reference to the bankruptcy court where "resolution of that action necessitates consideration of Title 11 and non-Bankruptcy Code law which affects interstate commerce," *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities*, 107 B.R. 34, 38 (D. Del. 1989) (describing mandatory withdrawal) or in other appropriate circumstances where "cause" is shown, *id.* at 39 (describing permissive withdrawal). Because the 1999 IICNA Policy dispute involves insurance contract interpretation issues that arise exclusively under state law and independently of the Bankruptcy Code created rights or other federal law, the factors for mandatory withdrawal are not present. Cause exists, however, for permissive withdrawal and, therefore, the 1999 IICNA Policy dispute should proceed before this Court.

-8-

16. Although Congress provided no statutory definition of "cause," Third Circuit courts consider the following factors when conducting a discretionary withdrawal analysis:

> [1] whether the claim is a core bankruptcy proceeding or whether it is non-core; [2] whether the parties have requested a jury trial; and [3] whether withdrawal would serve judicial economy, such as the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process.

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 913 (D. Del. 1996). *See also In re Pruitt*, 190 F.2d 1160, 1168 (3d Cir. 1990) (district court failed to evaluate cause for withdrawal, which did not exist under facts of proceeding). Here, as IICNA has argued in its motion to withdraw the reference (DI 6) filed in connection with the Liquidating LLC Adversary, the relevant factors would support withdrawal of the reference if the 1999 IICNA Policy dispute was before the Bankruptcy Court.

17. To begin with, as set forth herein above, the 1999 IICNA Policy dispute is a non-core matter, which is a significant factor that supports proceeding before this Court. *See NDEP Corp.*, 203 B.R. at 908. Additional considerations that support keeping the 1999 IICNA Policy dispute before this Court include the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, minimizing delay and costs to the parties, and expediting the bankruptcy process. *See Pruitt*, 910 F.2d at 1168; NDEP *Corp.*, 203 B.R. at 908.

18. Pragmatic concerns about judicial efficiency take precedence over strictly legal determinations when deciding whether a matter should proceed before a district court instead of the bankruptcy court. *See Travelers Ins. Co. v. Goldberg,* 135 B.R. 788, 792 (D. Md. 1992). In *Goldberg*, the court declined to refer the case to the bankruptcy court in view of the inescapable conclusion that the district court would "in all probability be required either to make *de novo*

factual determinations or to hold a jury trial in the first instance." 135 B.R. at 792; *see also Travelers Indem. Co. v. Babcock & Wilcox Co.,* No. CIV.A. 01-3387, 2002 WL 100625, at *4 (E.D. La. Jan. 23, 2002) (granting motion to withdraw the reference and noting that "[t]he issues before the bankruptcy court are non-core issues, with which the bankruptcy court has no greater familiarity than does [the district court].").

19.     Similarly, in this action, considerations of judicial efficiency and costs to the parties weigh heavily in favor of having the 1999 IICNA Policy dispute resolved in this Court. Adjudicating the matter first in the Bankruptcy Court will only add an additional layer of judicial review and require duplication of effort. Not only will judicial resources be wasted, but the parties will be forced to expend unnecessary sums on duplicative activity. What will otherwise involve the two-step process described above can be resolved in a single step if this Court resolves the matter in the first instance. Moreover, given the common factual underpinnings and legal theories between the subsequently filed Liquidating LLC Adversary and this adversary proceeding it makes most sense to proceed with the 1999 IICNA Policy dispute in this action to eliminate any risk of conflicting rulings and duplication of efforts.

20.     Considerations of judicial economy and efficiency also favor keeping the 1999 IICNA Policy dispute before this Court. *See NDEP Corp.*, 203 B.R. 913 (stating that, even absent right to jury trial, court would nonetheless have withdrawn the reference because case involved contract, tort, and restitution claims "somewhat removed from the bankruptcy court's realm of expertise"); *In re G-I Holdings, Inc.*, 295 B.R. 211, 218 (D.N.J. 2003) (court need not determine viability of defendants' jury trial right claims in proceeding where non-core issues predominate; issues surrounding jury trial claim as well as state law dispute more appropriately and economically decided in district court); *In re Pelullo*, 1997 U.S. Dist. LEXIS 12324, at *5

(E.D.Pa. Aug. 15, 1997) ("Since the bankruptcy court may not enter a final order or judgment in a non-core proceeding without the consent of the parties, keeping the proceeding in the bankruptcy court wastes judicial resources because the district court must review the bankruptcy court's proposed findings of fact and conclusions of law *de novo.*").  Where, as here, the parties in a non-core proceeding have not consented to entry of final judgment by the bankruptcy court judge, this Court would have to review the Bankruptcy Court's findings and conclusion *de novo* in any event.  *See* 28 U.S.C. § 157(c)(1).  Therefore, considerations of judicial economy favor proceeding with the 1999 IICNA Policy dispute before this Court.  *Hatzel & Buehler*, 107 B.R. at 40 (D. Del. 1989).

21.     Moreover, it is appropriate to proceed before the district court where the proceeding at issue is sufficiently different from the kinds of cases that typically arise in the course of bankruptcy administration.  Where, for example, extensive discovery or expert testimony may be required, or a lengthy or complex trial is anticipated, the matter should proceed before the district court and not the bankruptcy court.  *See, e.g., Complete Management Inc. v. Arthur Andersen, LLP (In re Complete Management, Inc.)*, 02 Civ. 01736, 2002 U.S. Dist. LEXIS 18344, *12 (S.D.N.Y. Sept. 27, 2002).  *See also G-I Holdings*, 295 B.R. at 217-18 (finding withdrawal serves the court's best interest by "adjudicating the non-bankruptcy dispute once, while the Bankruptcy Court continues to administer the Chapter 11 reorganization and conduct other common bankruptcy proceedings.").  *Cf. Miller v. Harlow Credit & Clearing Corp.*, Adv. No. 91-0702F, 1992 U.S. Dist. LEXIS 1823, *4-5 (E.D. Pa. Feb. 14, 1992) (noting that judicial economy might prove sufficient cause for withdrawal of even a core proceeding under certain circumstances).

22.     The Liquidating LLC Adversary seeks relief similar to that sought in this adversary. Rather than having virtually identical litigation proceeding in both the Bankruptcy Court and this Court, withdrawing the reference with respect to the Liquidating Adversary so that it can proceed simultaneously in this Court with this adversary would promote uniformity and avoid any risk of inconsistent rulings and duplication of efforts.

23.     Considerations of forum shopping and confusion and fostering the economic use of debtors' and creditors' resources either do not apply to the instant case or support proceeding before this Court. Reducing forum shopping is not applicable here. If, however, the Liquidating LLC Adversary was permitted to proceed in the Bankruptcy Court, even for pre-trial matters, this Court would still have to review the Bankruptcy Court's orders *de novo* without the benefit of having overseen the pre-trial stage of the proceeding, resulting in unnecessary duplication of effort. Accordingly, it is appropriate to adjudicate the 1999 IICNA Policy dispute before this Court because it fosters the economic use of the parties' and Court's resources.

  **C. Under The "First-Filed" Rule, The 1999 IICNA Policy Dispute Should Proceed In The District Court.**

24.     "The 'first-filed' rule is a judicially-created doctrine that is designed to avoid concurrent litigation of the same issues, between the same parties, in more than one federal court." *Omnicom Group, Inc. v. Employers Reinsurance Corporation*, 2002 WL 109346, Sleet, J., *2 (D.Del. Jan. 28, 2002)(citing *EEOC v. University of Pennsylvania*, 850 F.2d 969, 971-72 (3rd Cir. 1988)). The policy underlying this rule is "eminently practical" in that litigants should be safe from responding to subsequent litigation on similar subject matter and courts should not be overburdened with concurrent similar litigation. *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 265 F.Supp.2d 445, 448 (D.Del. 2003)(citing *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3rd Cir. 1941)(quoting *Smith v. McIver*, 22 U.S. 532, 535, 6 L.Ed. 152,

DOCS_DE 111090v2

cert. denied, 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942))). The first-filed rule promotes sound judicial administration and economy. *Guidant Corporation v. St. Jude Medical, Inc.*, 2004 WL 1925466, Robinson, J., *3 (D.Del. Aug. 27, 2004)(citing *EEOC v. University of Pennsylvania*, 850 F.2d at 971). "[O]nly in 'rare or extraordinary circumstances' should the first-filed action give way to one filed later." *Chase Manhattan Bank*, 265 F.Supp.2d at 448 (quoting *EEOC v. University of Pennsylvania*, 850 F.2d at 972)(describing such extraordinary circumstances as inequitable conduct, bad faith, or forum shopping).

25. In this matter there are no extraordinary circumstances warranting deviation from the first-filed rule. Given Liquidating LLC's intervention and the proposed amendment to the Complaint, this adversary proceeding involves the same parties and issues that are presented in the Liquidating LLC Adversary. Allowing the Liquidating LLC to sever the 1999 IICNA Policy dispute from this adversary proceeding and refer it to the Bankruptcy Court would result in wasteful concurrent litigation that the first-filed rule is meant to prevent. Accordingly, the 1999 IICNA Policy contract interpretation dispute should be included in this pending adversary proceeding. As such, IICNA's motion to withdraw the reference (DI 6) as to the Liquidating LLC Adversary should be granted, and the Liquidating LLC Adversary should be consolidated with this first-filed action.

## Conclusion

26. The 1999 IICNA Policy dispute is a non-core, insurance contract interpretation dispute arising exclusively under state law and entirely independent of rights created by the Bankruptcy Code. Considerations of judicial economy strongly favors adjudicating the 1999 IICNA Policy dispute in this Court. Accordingly, for the reasons set forth above, as well as those contained in IICNA's Motion to Amend Complaint [DI 15], IICNA requests that this Court

deny all aspects of the Motion other than to allow Liquidating LLC to intervene as a party in this adversary proceeding.

Dated: May 27, 2005                                                     **WHITE AND WILLIAMS LLP**

                                                      */s/ Marc S. Casarino*
                                                      Christian J. Singewald (No. 3542)
                                                      Marc S. Casarino (No. 3613)
                                                      824 N. Market Street , Suite 902
                                                      P.O. Box 709
                                                      Wilmington, DE 19899-0709
                                                      Telephone: (302) 467-4510
                                                      Telecopier: (302) 467-4547
                                                      singewaldc@whiteandwilliams.com

                                                                 **and**

                                                      Leonard P. Goldberger
                                                      (Member of the PA Bar)
                                                      1800 One Liberty Place
                                                      Philadelphia, PA   19103
                                                      Telephone:  (215) 864-7000
                                                      Telecopier: (215) 864-7123

                                                                 **and**

                                                     Francis J. Deasey, Esquire
                                                     Gerald J. Valentini, Esquire
                                                     DEASEY, MAHONEY & BENDER, LTD.
                                                     1800 John F. Kennedy Boulevard
                                                     Suite 1300
                                                     Philadelphia, PA   19103
                                                     Telephone:  (215) 587-9400
                                                     Telecopier:  (215) 587-9456

                                                     **Attorneys for Indemnity Insurance**
                                                     **Company of North America**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| INTEGRATED HEALTH SERVICES, INC., *et al.*, | ) ) ) | |
| | ) | CASE NO. 00-389 (MFW) |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 04-1262 (GMS) |
| INTEGRATED HEALTH SERVICES, INC. and ABE BRIARWOOD CORP., | ) ) ) | |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

I, Marc S. Casarino, Esquire, certify that I am not less than 18 years of age, and that I caused service of the attached **Plaintiff, Indemnity Insurance Company of North America's Response to Motion of IHS Liquidating LLC to Intervene and Response to the Motion of Indemnity Insurance Company of North America to Amend the Complaint** to be made on May 27, 2005, to the following:

**VIA HAND DELIVERY:**
Alfred Villoch, III, Esquire
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
17th Floor
1000 West Street
Wilmington, DE 19801

**VIA FIRST CLASS MAIL:**
Arthur Steinberg, Esquire
Ana M. Alfonso, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022-3598

DOCS_DE 111090v2

-2-

**VIA HAND DELIVERY:**
Frederick B. Rosen, Esquire
Jaspan Schlesinger Hoffman LLP
913 N. Market Street, 12th Floor
Wilmington, DE 19801

**VIA FIRST CLASS MAIL:**
Abraham Backenroth, Esquire
Backenroth Frankel & Krinsky LLP
489 Fifth Avenue
New York, NY 11023

**VIA HAND DELIVERY:**
Joanne B. Wilks, Esquire
Stephanie A. Fox, Esquire
Klehr Harrison Harvey Branzburg
& Ellers LLP
919 Market Street
Suite 1000
Wilmington, DE 19801

**VIA FIRST CLASS MAIL:**
Jenette A. Barrow-Bosshart, Esquire
Otterbourg Steindler Houston & Rosen PC
230 Park Avenue
New York, NY 10169

Under penalty of perjury, I declare that the foregoing is true and correct.

Dated: May 27, 2005                    */s/ Marc S. Casarino*
                                                  Marc S. Casarino (#3613)

-2-